**The STATE of Texas, Appellant,**

v.

**Charles Ray GARRETT, Jr., Appellee.**

**No. 03–99–00729–CR.**

Court of Appeals of Texas, Austin.

June 22, 2000.

---

Giselle Horton, Asst. County Atty., Austin, for State.

William P. Allison, Elaine Polemenakos, Allison, Yeager & Bassett, L.L.P., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MACK KIDD, Justice.

Appellee Charles Ray Garrett, Jr. was charged by information with the misdemeanor offense of driving while intoxicated ("DWI"). *See* Tex.Penal Code Ann. § 49.04 (West Supp.2000). Garrett filed a motion to suppress all evidence obtained at the time of his detention. The trial court granted the motion in part, ruling that Garrett's arrest without a warrant was illegal and suppressing all evidence obtained thereafter. The State of Texas appeals from the trial court's interlocutory order in three points of error, arguing that

the DWI arrest was not an unreasonable search and seizure under the United States Constitution, the Texas Constitution, or the Texas Code of Criminal Procedure. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex.Code Crim.Proc. Ann. art. 14.01 (West 1977) & art. 38.23 (West Supp.2000). We will reverse and render judgment, overruling the trial court's partial granting of the motion to suppress, and remand this cause to the trial court for further proceedings.

## BACKGROUND

On the night of June 12, 1998, Austin police officer Andrew Sheehan observed Charles Garrett run a red light at the corner of 38th Street and Red River. Sheehan directed his partner, Officer John Spillers, to follow Garrett's truck so that they could stop Garrett for the traffic violation. Garrett turned abruptly into the parking lot of an apartment complex forcing Spillers to make a U-turn to continue pursuit.

In the parking lot, Spillers pulled up behind Garrett. Garrett then jumped out of his truck and walked quickly back toward the officers. While Spillers was on the radio, Sheehan exited the police car to talk to Garrett. Since police officers are trained to be wary of suspects who appear nervous and approach officers quickly, Sheehan prepared for a possible confrontation with Garrett. When Sheehan asked whether Garrett lived in the apartment complex, Garrett refused to answer. Instead Garrett responded, as transcribed by Sheehan in the offense report, "Well sir, I know I messed up on that red light, I ran it, and I don't want to disrespect you." From this, Sheehan drew the conclusion that by turning into the parking lot, Garrett had been trying to evade arrest. Sheehan conducted a pat down of Garrett but found nothing suspicious.

Sheehan observed that Garrett had watery eyes, smelled strongly of alcohol, and was unsteady on his feet. Officer Sheehan asked Garrett how much he had had to

drink that night. Garrett replied, "Sir, I don't want to disrespect you." The officer asked again and received a similar non-responsive answer from Garrett. This time, Garrett volunteered the information that he had been at a "strip club" called The Lady and that Sheehan should just "do your job and put me in jail." Sheehan asked a third time and again Garrett failed to respond directly. Garrett did say that he was a security guard at the University of Texas and that "I don't disrespect police officers, just put me in jail."

At this point, Sheehan instructed Spillers to conduct several standard field sobriety tests on Garrett. Spillers demonstrated the Horizontal Gaze Nastagmus test ("HGN test"), the walk-and-turn test, and the one-leg-stand test, but Garrett refused to cooperate in any of the tests. Having also smelled an odor of alcohol on Garrett, Spillers arrested him. After arresting Garrett, Spillers conducted an inventory search of the truck and found a half-full bottle of wine inside the vehicle. The bottle had been closed by reinserting the cork. Garrett was then taken to the police station where he was videotaped. At that time, Garrett also refused to take a breathalyzer test.

Garrett was charged by information with DWI. Garrett filed a motion to suppress all evidence gathered by Officers Sheehan and Spillers before and after the arrest. At the suppression hearing, Officers Sheehan and Spillers testified to the facts outlined above. At the conclusion of the hearing, the trial court partially granted Garrett's motion to suppress, allowing in evidence the oral statements Garrett voluntarily made before the arrest but suppressing all evidence subsequent to the arrest. The State appeals.

## DISCUSSION

■ In its first two points of error, the State argues that the trial court erred in partially granting the suppression motion because the DWI arrest was not unreasonable under the Fourth Amendment to the United States Constitution or under Article I, Section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. In its third point of error, the State argues that the trial court erred in partially granting the suppression motion because the DWI arrest did not violate Garrett's rights under chapters 14[1] or 38[2] of the Texas Code of Criminal Procedure. *See* Tex.Code Crim.Proc.Ann. ch. 14 (West 1977 & Supp.2000) & ch. 38 (West 1979 & Supp.2000). In this case, we examine the reasonableness of Garrett's arrest, specifically the existence of probable cause, in light of the totality of the circumstances. *See Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Hulit v. State,* 982 S.W.2d 431, 435–36 (Tex.Crim.App.1998). Because this test is the same under the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure, we will consider all three of appellant's points of error together. *See Terry v. Ohio,* 392 U.S. at 20, 88 S.Ct. 1868; *Hulit v. State,* 982 S.W.2d at 435–36. We will sustain all three of these points of error.

*Probable Cause*

■ We review the trial court's ruling that the police officers did not have probable cause to arrest Garrett for DWI. "Probable cause exists when the facts and

1. Chapter 14 of the Texas Code of Criminal Procedure deals with warrantless arrests. *See* Tex.Code Crim.Proc.Ann. ch. 14 (West 1977 & Supp.2000). The Texas Court of Criminal Appeals has held that these statutory provisions require the legal equivalent of constitutional probable cause. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App. 1991).

2. Chapter 38 of the Texas Code of Criminal Procedure deals with evidence in criminal actions. *See* Tex.Code Crim.Proc.Ann. ch. 38 (West 1979 & Supp.2000). Article 38.23 has been found to codify the state and federal constitutional bans on the admission of evidence obtained as a result of an illegal search or seizure. *See Cooper v. State,* 956 S.W.2d 95, 98 (Tex.App.—Tyler 1997, pet. ref'd).

circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense." *Hughes v. State,* 878 S.W.2d 142, 154 (Tex.Crim.App.1992). Probable cause must be examined in light of the totality of the circumstances established by the evidence. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991).

 Since probable cause is considered a "mixed question of law and fact," the amount of deference a reviewing court affords to a trial court's ruling on probable cause is often determined by which judicial actor is in a better position to decide the issue. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Here, the credibility of the officers is not at issue. The trial court found both officers to be credible witnesses;[3] thus, we will accept the testimony of both officers as accurate. We note that although both officers may have observed different particulars of the same event, it does not follow that the officers' testimony was inconsistent. Since this case does not turn on a question of credibility, the trial judge is not in a better position to decide whether the totality of the circumstances justified a warrantless arrest, and this Court may undertake a *de novo* review. *See id.* at 87–89. Thus, we look to the facts of the case at bar to determine whether probable cause has been established.

 Several factors in this case weigh in favor of finding probable cause. First, Garrett demonstrated unlawful and erratic driving behavior by driving through a red light and making a sudden turn into a parking lot. Without question, the officers could legitimately stop Garrett to investigate this traffic violation.[4] *See* Tex. Transp.Code Ann. § 544.007 (West 1999).

Upon investigation, Officer Sheehan noted that Garrett smelled strongly of alcohol, had watery eyes, and was unsteady on his feet. Officer Spillers was also able to smell alcohol on Garrett, even from six to eight feet away. The odor of alcohol, watery eyes, and unsteadiness are all classic signs that suggest a suspect's mental and physical faculties might be impaired. *See Markey v. State,* 996 S.W.2d 226, 230 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Second, Garrett turned into a parking lot of an apartment complex where he apparently did not reside. This suggested to the officers that Garrett had been trying to evade arrest. Garrett admitted to the officers that he was a security officer at the University of Texas, suggesting to the officers that he knew the law. Garrett also told the officers that he did not mean "to disrespect them" and that they should just take him to jail. The record reflects that Garrett went so far as to admit by implication that he had been drinking at The Lady:

> A I [Sheehan] asked him how much he had to drink tonight, and he replied, "Sir, I don't want to disrespect you." I asked him a second time, how much he had to drink that night, and he said in quote, "See sir, I was at The Lady, that's why I don't want to tell you, I think you should just do your job and put me in jail."
>
> Q Did he ever tell you how much he had to drink?
>
> A I asked him a third time, and he replied, "I don't want to disrespect police officers, sir, just put me in jail."

Finally, Garrett refused to participate in any of the usual field sobriety tests from which the officers could have made a better assessment of Garrett's mental and physical state. When Spillers offered the

---

**3.** Judge Denton said specifically, "I find the officers to be credible. I find the officers' actions given the circumstances that evening were entirely appropriate and correct...."

**4.** Neither party questions the reasonableness of the traffic stop in this case.

HGN test to Garrett, Garrett turned his head to the ground and refused to participate.[5] Garrett said, "sir, I don't mean to disrespect you, just do your job and put me in jail." Next, Spillers demonstrated the walk-and-turn test for Garrett. This test requires the suspect to walk from heel to toe in a straight line and turn around smoothly. *See Texas Dep't of Pub. Safety v. Rodriguez*, 953 S.W.2d 362, 363 (Tex. App.—Austin 1997, no pet.). After Spillers's demonstration, Garrett once again refused to perform the test and responded generally that he did not mean "to disrespect" Spillers and the officer should "just go ahead and do his job." The one-leg-stand test was also demonstrated and, with a similar statement, Garrett again refused to comply.

Defendant's argument—which prevailed in the trial court—was that classic indicators of inebriation that would be present in a normal DWI arrest were absent in this case. We note that many of these factors, such as performance on field sobriety tests, were absent as a direct result of defendant's conduct, *i.e.*, his refusal to participate in any of these tests. While we regard absent factors as a part of the totality of the circumstances, they are only a part, and where many of the missing factors are due to a defendant's conduct, we believe that the officers could reasonably consider that conduct as part of the totality of the circumstances. We therefore sustain all three of the State's points of error.

## CONCLUSION

We conclude that under the totality of circumstances, the officers had probable cause to justify a warrantless arrest of Garrett. The judgment of the trial court is reversed, and judgment is rendered overruling the trial court's granting in part of the motion to suppress. This cause is remanded to the trial court for further proceedings.

5. An officer administering an HGN test looks for three factors: "(1) an inability to pursue smoothly an object, moving sideways across the suspect's field of vision; (2) distinct, or pronounced, nystagmus at the eye's maximum horizontal deviation; and (3) an angle of onset of nystagmus of less than or equal to 45 degrees." *Emerson v. State*, 880 S.W.2d 759, 766 (Tex.Crim.App.1994). The HGN test "presumes that a sober person will exhibit smooth eye movement up to a greater angle than an intoxicated person." *Howard v. State*, 744 S.W.2d 640, 641 (Tex.App.—Houston [14th Dist.] 1987, no pet.).