# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00615-CR

**The State of Texas, Appellant**

**v.**

**Tami Neumann, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 636,247, HONORABLE CLAUDE D. DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Tami Neumann was charged by information with second offense driving while intoxicated. *See* Tex. Pen. Code Ann. '' 49.04, .09 (West 2003 & Supp. 2004). Neumann moved to have evidence acquired during the stop suppressed on the grounds that the officers lacked probable cause or reasonable suspicion to stop her and, thus, the stop and subsequent search of her car were illegal and any evidence seized as a result was inadmissible as Afruits of the poisonous tree.@ The trial court granted the motion, and the State appeals. We affirm the trial court=s order granting Neumann=s motion to suppress.

### Factual Background

At about 2:15 a.m. on the morning of April 3, 2003, Austin Police Officer Matthew Sanders of the DWI unit was called to back up Officer Wismar at a DWI stop, to help the more senior

officer with DWI paperwork so Wismar could get back to patrol. When Sanders arrived, Neumann was pulled over in a parking lot; Wismar told Sanders that he had seen a car run a stop sign, but Sanders did not see the alleged traffic violation. No other cars were pulled over or stopped in the area. Sanders took over questioning Neumann, who told him that she worked at a nearby bar. During his conversation with Neumann, Sanders concluded that she was intoxicated, and Neumann was arrested and charged with DWI.

Sanders later prepared an Aaffidavit for warrant of arrest and detention,@relating Wismar=s statements about the traffic stop. The affidavit states that Wismar observed Neumann driving a 1989 Toyota two-door at 4th Street and San Antonio and stopped her for running a stop sign while going west on 4th Street.[1] Sanders testified that Wismar had prepared a supplemental report that had Neumann=s Aactual vehicle information on it@and that the supplement described a different vehicle than did Sanders=s probable cause affidavit.[2] Neumann=s attorney argued that Neumann did not drive a 1989 Toyota two-door[3] and that Wismar had stopped the wrong car. Only Sanders testified at the hearing; Neumann=s attorney stated that the State had subpoenaed Wismar, but that Wismar had not responded to the subpoena.

Sanders testified that Wismar told him Athat the defendant who was in the vehicle that he stopped is the one that ran the stop sign.@ Sanders was certain that Neumann was the person Wismar stopped, but he could not testify as to whether she was the person who committed the traffic offense. Although the affidavit recites that Wismar told Sanders that a 1989 Toyota two-door had run the stop sign, Sanders testified that Wismar did not specifically give him that description. Sanders testified that clerical errors sometimes occur in the preparation of paperwork:

---

[1] Sanders testified that he was Apretty sure@that the bar where Neumann worked was east of the intersection where she was stopped and was surprised to learn that it was actually west of the intersection.

[2] Wismar=s supplemental report was not introduced into evidence and is not before this Court for consideration.

[3] Sanders could not remember what Neumann was driving, but the testimony and discussions at the hearing establish that it was different than the 1989 Toyota two-door described in the affidavit. The State does not dispute on appeal that Neumann drove a different kind of car.

> An error like that can be made any number of ways. A dispatcher could have written in C typed in the . . . license plate wrong. What I usually do when I get to the report writing is I pull up the CAD sheet . . . . I usually get all my information off of that sheet so I don=t have to take the time on the scene to write it down because it=s already there.

The trial court stated that it found Sanders to be a credible witness, but granted Neumann=s motion to suppress, making a finding from the bench that there was no reasonable suspicion to stop Neumann.

## Analysis

The question presented is whether the trial court erred in finding that the State failed to carry its burden to show that there was reasonable suspicion to stop Neumann=s car.

In reviewing a trial court=s ruling on a motion to suppress, we defer to the court=s factual determinations but review *de novo* the court=s application of the law to the facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the credibility of the testifying officer is not at issue, we review the court=s determination of reasonable suspicion *de novo. See State v. Garrett*, 22 S.W.3d 650, 654 (Tex. App.CAustin 2000, no pet.) (citing *Guzman*, 955 S.W.2d at 87-89).

When a defendant seeks to suppress evidence on the basis of an unreasonable search and seizure, she must first show that she was seized or arrested without a warrant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). Once the defendant makes that showing, the State must show the seizure was reasonable. *Id*. at 10. The reasonableness of the seizure need not be proved beyond a

4

reasonable doubt and is justified if the officer had specific and articulable facts amounting to more than a mere suspicion that, combined with his experience, knowledge, and logical inferences, created a reasonable suspicion that criminal activity was afoot. *State v. Brabson*, 899 S.W.2d 741, 746-47 (Tex. App.CDallas 1995), *aff=d*, 976 S.W.2d 182 (Tex. Crim. App. 1998) (citing *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994)).

The State argues on appeal that the trial court erred in (i) finding that the State had not met its burden of proof because Wismar did not testify and (ii) suppressing the evidence as having been acquired in violation of Neumann=s rights. *See* U.S. Const. amend. IV; Tex. Const. art. I, ' 9; Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2004). The State contends that, because the trial court found Sanders to be credible, there is no reasonable view of the record that would support a finding that the stop was illegal and that it was error to suppress the evidence due to the Aclerical mistake@ related to the description of Neumann=s car.

Initially, we note that even if the trial court articulated from the bench an erroneous reason for its decision, we will not automatically reverse the decision. Instead, we will sustain the ruling if it can be supported by the evidence on any correct legal theory. *See Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Sanders=s probable cause affidavit describes a different car than the one Neumann was driving. However, Sanders testified that Wismar did not tell him that he saw a 1989 Toyota two-door car run the stop sign and explained that the description of the car must be an error, giving some examples of

5

how such errors may occur. Sanders was sure that Neumann was the person Wismar had stopped and testified that Wismar told him Athat the defendant who was in the vehicle that he stopped is the one that ran the stop sign.@

The critical issue in the case is the credibility of Wismar=s statements to Sanders at the scene. The trial court evidently concluded that the State did not sustain its burden in that regard. The trial court=s finding that Sanders was a credible witness does not foreclose the possibility that the court determined that Wismar=s statements to Sanders were not shown by the State to be sufficiently probative or reliable. Giving deference to the trial court=s factual determinations, we hold that the court could have found that Neumann=s car was not shown to be the vehicle Wismar saw run the stop sign, despite Wismar=s out-of-court statement to Sanders to the contrary. If Wismar stopped the wrong car, the stop was unlawful. We will not adopt a legal theory that leads to reversal if there is a viable theory that supports the ruling. *See Ross*, 32 S.W.3d at 858.

**Conclusion**

Because there are other legally correct theories that could support the trial court=s decision, we overrule the State=s issues and affirm the trial court=s order granting the motion to suppress.

_____

Jan P. Patterson, Justice

6

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 12, 2004

Do Not Publish