TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00856-CV






Department of Public Safety, Appellant


v.


Elisa Suarez, Appellee






FROM COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY

NO. 13379-C, HONORABLE ANNA M. BOLING, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The trial court reversed an administrative order authorizing the Department of
Public Safety (DPS) to suspend the driver's license of Elisa Suarez for a period of two years. The
suspension was based on Suarez's refusal to submit to the taking of a specimen following her arrest
for the offense of driving while intoxicated. See Tex. Transp. Code Ann. § 724.035(a) (West 2011).
DPS appeals the trial court's reversal. In three issues on appeal, DPS argues that substantial
evidence supports the administrative findings that (1) the arresting officer had probable cause
to arrest Suarez for DWI, and (2) that Suarez had a prior "alcohol-related contact," which was
required to enhance her period of suspension from 180 days to two years. See id. § 724.035(b). We
will reverse the trial court's order and render judgment reinstating the decision of the administrative
law judge (ALJ).


BACKGROUND

 No live testimony was presented at the administrative hearing. Instead, the ALJ
considered the police report of Officer Eric Charleswell of the San Marcos Police Department, the
officer who had arrested Suarez. According to Charleswell's report, at approximately 6:07 a.m. on
February 6, 2010, he was dispatched to an apartment to investigate a report of an intoxicated and
injured female who had been involved in an automobile accident. Upon Charleswell's arrival at the
apartment, he made contact with Francesca Flores, who was bleeding from a laceration on her
right forearm. According to Charleswell, Flores, who exhibited signs of intoxication, "stated that
her friend Elisa Suarez was driving her home and crashed her vehicle in a ditch." When Charleswell
asked Flores what had happened, "she was unsure on what caused the collision but stated that
Suarez was driving."

 Charleswell next made contact with Madeline Christine Rackley, who was also in the
apartment. Rackley told Charleswell that she had met Suarez, Flores, and Jeremy Schuessler at a
bar for drinks. According to Charleswell, "Rackley stated that she was unsure how much Suarez had
to drink prior to her arriving but observed Suarez drink several Vodka Tonics" and that they left the
bar and went to a tavern "where she observed Suarez drinking beer." After leaving the tavern, "they
all went to Schuessler's apartment" where "they played beer pong and played at least two games
from each side." This meant "that they had at least two beers each." Rackley also told Charleswell
that Suarez had agreed to drive Flores home and that, "just after they left Schuessler's apartment,
Suarez crashed the car."

 After speaking with Rackley, Charleswell attempted to interview Schuessler, but
Schuessler "was incoherent and at times would stop speaking with a dazed look in his eyes."
Charleswell then resumed speaking with Rackley, who was now sitting on a bed in Schuessler's
bedroom. Charleswell observed the outline of a second person "completely under the cover[s] on
the right side of the bed." Charleswell asked Schuessler who was under the covers, and Schuessler
told him that it was Suarez. Charleswell "pulled the cover[s] off of Suarez and asked her why she
did not come out to talk to me. . . . Suarez stated that she was asleep and did not know that I was
in the room." Charleswell observed that "Suarez's clothing was wet and she had debris from the
accident scene still in her hair."

 When Charleswell asked Suarez about the accident, "she stated that at approximately
0400 hours she was on Sessoms [Street] taking Flores home when a vehicle came into her lane
causing her to veer off of the road and crashing her car." Charleswell, who was approximately
five feet away from Suarez while they were talking, "could smell the odor of an intoxicating
beverage on her breath" and noticed that her eyes "were red and glossy." When Charleswell asked
Suarez how much she had to drink, she told him that she had two vodka tonics and a light beer
"but quit drinking at 0200 hours." Suarez also told Charleswell that she did not call EMS following
the accident because "her phone was damaged in the crash" and "that Flores did not want her to call
for help, so [Suarez] went to bed." Charleswell then escorted Suarez out of the apartment, asked her
if she would be willing to perform sobriety tests, and, after she refused, placed her under arrest for
DWI. Suarez subsequently refused to provide a sample of her blood.

 Also admitted into evidence at the hearing was Suarez's driving record. In a section
of the record entitled, "Enforcement Action History," Suarez had three reported "actions": (1) the
pending suspension based on Suarez's most recent refusal; (2) a 2009 refusal-based suspension; and
(3) a 2007 suspension based on Suarez having a "detectable" amount of alcohol in her system when
she was under 21 years of age. At the hearing, DPS argued that the length of Suarez's suspension
should be enhanced as a result of the 2009 suspension.

 After hearing argument from the parties and taking the matter under advisement, the
ALJ entered the following "findings of fact":


1) On February 6, 2010, reasonable suspicion to stop the Defendant existed in
that when [the] officer was investigating the accident Defendant admitted to
driving the motor vehicle when it ran into a ditch on Sessoms Street [in] Hays
County, Texas.


2) On the same date, probable cause to arrest the Defendant existed in that there
was probable cause to believe that Defendant was operating a motor vehicle
in a public place while intoxicated, because in addition to the facts in No. 1,
Officer observed the Defendant with an alcoholic beverage odor, red glossy
eyes, hostile, driving the vehicle when involved in a one car accident;
Defendant refused to perform field sobriety tests.


3) Defendant was operating a motor vehicle in a public place in Hays County,
Texas.


4) Defendant was placed under arrest and was properly asked to submit a
specimen of breath or blood.


5) After being requested to submit a specimen of breath or blood, Defendant
refused.


6) Defendant's argument was that the classic indicators that would be present
in a normal DWI arrest were absent in this case. Many of these factors, such
as performance on the field sobriety tests, were absent as a direct result of
Defendant's conduct, i.e., her refusal to participate in any of these tests. 
Where many of the missing factors are due to Defendant's conduct, the
Officer could reasonably consider that conduct as part of [the] totality of the
circumstances. See State v. Garrett, 22 S.W.3d 650, 659 (Tex. App.--Austin
2000).


7) Defendant has had one or more alcohol or drug related enforcement contacts
during the ten years preceding the date of Defendant's arrest as is indicated
on Defendant's driving record; contrary to defendant's assertion that the
driving record did not show that defendant was under arrest when she
refused, the arrest is statutorily necessary for an ALR refusal.



Based on the above findings, the ALJ concluded that DPS proved the statutory requirements for an
administrative license suspension and ordered that DPS was authorized to suspend Suarez's license
for a period of two years.

 Suarez appealed to the trial court. At the hearing before the trial court, Suarez made
two arguments. First, Suarez contended that Charleswell did not have probable cause to believe
that she was driving while intoxicated. Second, Suarez asserted in the alternative that the length
of her suspension should not have been enhanced because, in her view, DPS presented no evidence
of a prior "alcohol-related contact." The trial court, after taking the matter under advisement,
entered an order reversing the ALJ's decision and ordering Suarez's suspension rescinded. This
appeal followed.


STANDARD OF REVIEW

 "[C]ourts review administrative license suspension decisions under the substantial
evidence standard." Mireles v. Texas Dep't of Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999). A court
applying the substantial evidence standard of review may not substitute its judgment for that of
the agency. Mireles, 9 S.W.3d at 131. The issue for the reviewing court is not whether the agency's
decision was correct, but only whether the record demonstrates some reasonable basis for the
agency's action. Id. Courts must affirm administrative findings in contested cases if there is
more than a scintilla of evidence to support them. Id. However, the question of "whether there
is substantial evidence to support an administrative decision is a question of law, and on questions
of law, neither the trial court nor the administrative law judge is entitled to deference on appeal."
Texas Dep't of Pub. Safety v. Alford, 209 S.W.3d 101, 103 (Tex. 2006). Accordingly, we review
de novo the trial court's determination of whether substantial evidence supports the administrative
decision. See Texas Dep't of Pub. Safety v. Gonzales, 276 S.W.3d 88, 91 (Tex. App.--San Antonio
2008, no pet.).


ANALYSIS

 Because the trial court did not specify the basis for its reversal, DPS provides
arguments attacking both theories for reversal that Suarez presented to the trial court. In its first
and third issues, DPS argues that there was substantial evidence supporting the ALJ's finding
that Charleswell had probable cause to believe Suarez had been driving while intoxicated. In its
second issue, DPS contends that there was substantial evidence supporting the ALJ's finding that
Suarez had a prior "alcohol-related contact."

 We first address the evidence supporting the finding that Suarez's license should be
suspended. In a case in which DPS seeks to suspend an individual's license based on a refusal
to submit a specimen, DPS must prove four things at the administrative hearing: (1) reasonable
suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe
that the person was operating a motor vehicle in a public place while intoxicated; (3) the person
was placed under arrest by the officer and was requested to submit to the taking of a specimen;
and (4) the person refused to submit to the taking of a specimen on request of the officer.
Tex. Transp. Code Ann. § 724.042 (West 2011). Suarez challenged only the second requirement,
i.e., the existence of probable cause to believe that she was driving while intoxicated.

 "Probable cause exists where the police have reasonably trustworthy information,
considered as a whole, sufficient to warrant a reasonable person to believe a particular person
has committed or is committing an offense." Hughes v. State, 24 S.W.3d 833, 838 (Tex. Crim.
App. 2000) (citing Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)). "Probable cause
requires more than mere suspicion but far less evidence than that needed to support a conviction
or even that needed to support a finding by a preponderance of the evidence." Id. In other words,
DPS did not have to prove that Suarez was in fact driving while intoxicated, only that probable cause
existed to believe that she was. See Texas Dep't of Pub. Safety v. Butler, 110 S.W.3d 673, 677
(Tex. App.--Houston [14th Dist.] 2003, no pet.); see also Church v. State, 942 S.W.2d 139, 140
(Tex. App.--Houston [1st Dist.] 1997, pet. ref'd) ("The statute authorizing the suspension hearing
neither requires nor empowers the ALJ to decide the ultimate issue of whether appellant was actually
operating a motor vehicle while intoxicated.").

 In this case, the police report provides substantial evidence supporting the
ALJ's finding that Charleswell had probable cause to believe that Suarez had been operating a
motor vehicle in a public place while intoxicated. In the report, Charleswell states that when he
arrived at the apartment where Suarez was found, both Flores and Rackley informed him that Suarez
had been driving the vehicle that had crashed. Additionally, Rackley informed Charleswell that
she had observed Suarez drinking beer and "several Vodka Tonics" at two bars on the night of
the accident and that Suarez had been playing "beer pong" at Schuessler's apartment prior to
driving Flores home. Moreover, when Charleswell encountered Suarez at the apartment, Suarez
admitted that she had been drinking vodka and beer on the night of the accident and that she was
driving the car on Sessoms Street when it crashed. Suarez claimed that she had stopped drinking
at approximately 2:00 a.m. and that the crash did not occur until approximately 4:00 a.m. However,
even assuming Suarez's approximations of time are accurate, Charleswell could have reasonably
concluded that Suarez was nevertheless intoxicated at the time of the crash, particularly in light of
his observations that Suarez had "the odor of an intoxicating beverage on her breath," that her eyes
"were red and glossy," and that her "clothing was wet and she had debris from the accident scene
still in her hair." Also, when Charleswell found Suarez, she was "completely" under the covers in a
bed and admitted that she had not called 911 to report the accident. Both of these facts, Charleswell
could have reasonably concluded, were suspicious circumstances tending to show that Suarez had
been driving while intoxicated and had wanted to prevent authorities from discovering that fact. We
conclude that the above evidence, considered in its totality, provides a reasonable basis for the ALJ's
finding that Charleswell had probable cause to believe that Suarez was driving while intoxicated.
See Butler, 110 S.W.3d at 676-77; Texas Dep't of Pub. Safety v. Pruitt, 75 S.W.3d 634, 640-41
(Tex. App.--San Antonio 2002, no pet.); Texas Dep't of Safety v. Jones, 938 S.W.2d 785, 787
(Tex. App.--Beaumont 1997, no pet.); see also Texas Dep't of Pub. Safety v. Varme, 262 S.W.3d
34, 41 (Tex. App.--Houston [1st Dist.] 2008, no pet.) (officer's report constituted substantial
evidence to support ALJ's finding that officer had probable cause to arrest individual for DWI);
State v. Garrett, 22 S.W.3d 650, 655 (Tex. App.--Austin 2000, no pet.) (finding probable cause
existed to arrest defendant for DWI despite refusal of defendant to perform field sobriety tests). 

 We sustain DPS's first and third issues. (1)

 We next address the evidence supporting the length of the suspension. (2) The length
of the suspension is set by statute. "The period of suspension or denial is two years if the person's
driving record shows one or more alcohol-related or drug-related enforcement contacts, as defined
by Section 524.001(3), during the 10 years preceding the date of the person's arrest." Tex. Transp.
Code Ann. § 724.035(b). "Alcohol-related or drug-related enforcement contact" means, among
other things, a driver's license suspension resulting from a refusal to submit to the taking of a breath
or blood specimen following an arrest for an offense prohibiting the operation of a motor vehicle
while intoxicated. Id. § 524.001(3)(B) (West Supp. 2010).

 As we mentioned above, admitted into evidence at the administrative hearing was
Suarez's driving record, which included an "enforcement action" showing a refusal-based suspension
in 2009, which was within 10 years of Suarez's current arrest. At the hearing and before the
trial court, Suarez asserted that this evidence was not sufficient to prove an "alcohol-related contact"
because there was no indication in Suarez's driving record that her refusal followed an arrest.
However, an arrest is a statutory prerequisite to the requesting of a specimen. See id. § 724.012(a)
("One or more specimens of a person's breath or blood may be taken if the person is arrested . . . ."),
(b) ("A peace officer shall require the taking of a specimen of the person's breath or blood under any
of the following circumstances if the officer arrests the person . . . .") (emphasis added) (West 2011).
Thus, there can be no refusal of a specimen without the person first being arrested. Accordingly, the
above evidence that Suarez's license was suspended based on a refusal to provide a specimen is also
evidence that the refusal followed her arrest.

 We sustain DPS's second issue. (3)

CONCLUSION

 We reverse the trial court's order and render judgment reinstating the ALJ's decision
authorizing DPS to suspend Suarez's driver's license for a period of two years.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: August 25, 2011
1. Suarez devotes much of her briefing on these issues to an argument that was not raised
at either the administrative hearing or during the appeal before the trial court, specifically that
Charleswell did not have the authority to arrest Suarez without a warrant because he did not actually
observe her driving while intoxicated. See Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005)
("A peace officer may arrest an offender without a warrant for any offense committed in his presence
or within his view."). As DPS observes, because this argument was not raised below, it has been
waived on appeal. See Tex. R. App. P. 33.1. However, even if this argument had been preserved,
it would be without merit. Any peace officer may arrest, without a warrant, persons found in
suspicious places and under circumstances which reasonably show that such persons have been
guilty of a breach of the peace. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West Supp. 2010).
Driving while intoxicated is a breach of the peace. Gallups v. State, 151 S.W.3d 196, 201
(Tex. Crim. App. 2004). And, under the circumstances of this case as detailed in the police report,
the apartment in which Suarez was found could properly be considered a suspicious place. See id.
(concluding that defendant's home was suspicious place when defendant was found inside home,
intoxicated, following accident in which defendant had abandoned his wrecked truck and walked
home); Hollis v. State, 219 S.W.3d 446, 459 (Tex. App.--Austin 2007, no pet.) ("A place may
become suspicious because of facts and circumstances known to the officer and any reasonable
inferences that can be drawn from those facts.").
2. As an initial matter, Suarez asserts, without citing to any authority, that this issue is not
"ripe for review" because "the trial court did not address the length of the suspension determined by
the ALJ, nor is it an issue that would warrant summarily reversing the ALJ's ruling." However, the
ALJ did make a finding as to the length of the suspension, and the length of the suspension was one
of the grounds argued by Suarez for reversing the ALJ's decision. Moreover, the ALJ's decision
authorizes DPS to suspend Suarez's license for a period of two years, and that suspension will occur
if the ALJ's decision is reinstated. On this record, we conclude that the length of the suspension
is ripe for review. See Mitz v. Texas State Bd. of Veterinary Med. Exam'rs, 278 S.W.3d 17, 25-26
(Tex. App.--Austin 2008, pet. dism'd) (explaining ripeness doctrine); cf. Waco Indep. Sch. Dist.
v. Gibson, 22 S.W.3d 849, 851-52 (Tex. 2000) ("A case is not ripe when determining whether the
plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have
not yet come to pass.").
3. DPS also asserts for the first time on appeal that "the ALJ was not statutorily authorized
to make a finding of fact or conclusion of law regarding the length of the suspension in the
first place" and that DPS, not the ALJ, has sole authority to determine the suspension period. This
argument was not raised at the trial court below, and we need not reach it on appeal.