# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-19-00850-CR

---

**Anthony Michael McMurray, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY**
**NO. 18-04154-1, THE HONORABLE PHILLIP O. VICK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Anthony Michael McMurray of driving while intoxicated ("DWI").[1] *See* Tex. Penal Code § 49.04(a), (b). The trial court assessed punishment at three days in jail and rendered judgment on the jury's verdict. On appeal, McMurray challenges the sufficiency of the evidence supporting his conviction and the denial of a jury instruction. *See* Tex. Code Crim. Proc. art. 38.23. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Evidence at trial showed that in the early morning hours of July 5, 2018, Round Rock Police Officer Miguel Estrada was on the night-shift patrol and alert for "the possibility of more drunk drivers due to it being a holiday," when he noticed two vehicles driving side-by-side and over the speed limit. Officer Estrada began following the vehicles that then separated into

---

[1] This was a retrial held after another jury was unable to reach a unanimous verdict and the trial court ordered a mistrial.

different directions. He followed one of those vehicles, a Honda Civic that had no license plate and was driven by a man later identified as McMurray.

Officer Estrada stopped the Civic at 1:24 a.m. While approaching it, he saw that McMurray and a passenger were in the vehicle. Officer Estrada asked McMurray about speeding, and McMurray responded, "I've might've been speeding up, sure." Officer Estrada advised McMurray of the vehicle's missing license plate and asked if there was a temporary plate. McMurray responded, "There isn't any," and claimed that he didn't need one. Officer Estrada also asked McMurray for his driver's license. McMurray disputed his need for a license.[2] After Officer Estrada started speaking with McMurray, he smelled "an odor of alcohol emitting from [McMurray's] breath and person"; saw that McMurray had "red, bloodshot, glossy eyes"; and heard McMurray's "slurred speech"—all of which Officer Estrada considered signs of intoxication. He told McMurray that he smelled an odor coming from McMurray's breath and person and asked how much McMurray had to drink that night. McMurray shrugged and said, "Good question."

Officer Estrada asked McMurray to step out of the vehicle. McMurray questioned Officer Estrada repeatedly but ultimately complied. After McMurray exited the vehicle, Officer Estrada continued to smell alcohol coming from McMurray. Officer Estrada began asking him questions, such as where he was coming from, but McMurray refused to answer. McMurray also refused Officer Estrada's request to perform standard field-sobriety tests and suggested that Officer Estrada could "just drive me to my house" instead. Officer Estrada testified that in addition to McMurray's "uncooperative" manner, during the hours that

---

[2] Eventually McMurray did produce his driver's license to Officer Estrada.

he was with him, McMurray engaged in nonsensical and sometimes unintelligible conversation that "chang[ed] topics often."

Given the "totality of the circumstances," including his observation of McMurray's signs of intoxication, Officer Estrada "did not feel comfortable letting him get back on the road and driving," and he arrested McMurray for DWI. He then searched McMurray and in the pocket of his pants found receipts from Hurricane Grill and Wings and from Kung Fu Saloon showing purchases of numerous alcoholic drinks. The bar tab from Kung Fu Saloon totaled $199 and was closed at 12:22 a.m. that morning of July 5, approximately one hour before the traffic stop.

Officer Estrada placed McMurray in his patrol car and read the statutory "DIC 24" warning to him. McMurray interjected with questions and began singing "blalalalalala" and other nonsense words as well as making fun of Officer Estrada while Officer Estrada was informing him of his rights. When Officer Estrada requested a sample of McMurray's breath or blood, McMurray refused.

In the intervening hours between the arrest and McMurray's blood draw, McMurray was in police custody. From the scene of the arrest, Officer Estrada and McMurray proceeded to the police department so that Officer Estrada could prepare paperwork for a search warrant. While in the patrol car, McMurray engaged in digressive speech on various topics, including school shootings, unnecessary laws, and jailing people, and he accused Officer Estrada of being "part of the problem."

After Officer Estrada received the search warrant for McMurray's blood, he transported McMurray to a hospital for the blood draw. As he was being buckled into the rear seat of the patrol car, McMurray said, "I hope I don't die." He then screamed at Officer Estrada,

3

"Shit, I couldn't do anything for—to you if I was dead, right? F[---]k!" McMurray's blood draw was conducted at 3:46 a.m. at the hospital. Subsequent testing of that blood showed that McMurray had a blood-alcohol content (BAC) of .100 grams of alcohol per 100 milliliters of blood. McMurray filed a pretrial motion to suppress evidence, which the trial court denied.

During trial, the forensic scientist with the Texas Department of Public Safety Crime Lab who analyzed the blood testified that McMurray was intoxicated when his blood was drawn. She testified that someone who has not been drinking for two-and-a-half hours would have a falling BAC and that, based on the time interval between when McMurray was stopped and when the blood was drawn, his BAC would have been falling.

Keith Kiddy, McMurray's longtime friend and passenger on the date of the arrest, also testified during trial. Kiddy acknowledged that he was "absolutely" intoxicated when the vehicle was pulled over and that he had difficulty remembering the events of that night, but he recalled going to Kung Fu Saloon with McMurray. Kiddy testified that he was away from McMurray multiple times during the evening, and for progressively longer periods each time, when Kiddy stepped outside to smoke. Kiddy could not state when McMurray started or stopped drinking, noting that, "[T]he later it got obviously the less—the more fuzzy it got for me." While testifying, Kiddy viewed the police video of McMurray and opined that it did not show McMurray's bloodshot eyes or slurred speech. Further, Kiddy said that he did not "recall" seeing McMurray with bloodshot eyes during that day or McMurray having slurred speech at any time. Kiddy testified that he knew McMurray was not slurring his words—despite Kiddy's own intoxication at the time of the stop—because Kiddy had "just watched the video" while sober.

During the charge conference, McMurray requested and was denied an instruction to the jury to disregard any evidence obtained against McMurray if it believed, or had "reason to

4

doubt," that he was arrested without probable cause. After the jury found McMurray guilty of DWI, the trial court assessed punishment at three days in jail and entered judgment on the verdict. McMurray filed a motion for new trial, which was denied by operation of law. This appeal followed.

## DISCUSSION

**Sufficiency of the Evidence**

In his first issue, McMurray contends that there is insufficient evidence supporting his DWI conviction. Evidence is legally sufficient if a rational jury could find each essential element of the offense beyond a reasonable doubt. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). When reviewing the sufficiency of the evidence, we consider all the admitted evidence and view it in the light most favorable to the verdict. *Harrell*, 620 S.W.3d at 913-14; *Murray*, 457 S.W.3d at 448. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Harrell*, 620 S.W.3d at 914 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). On appeal, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We may not use a "divide and conquer" strategy for evaluating the

5

sufficiency of the evidence because that approach does not consider the cumulative force of all the evidence. *Id.* "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Id.* We apply the same standard of review for both circumstantial- and direct-evidence cases. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient" to support a conviction. *Id.*

A person commits the offense of driving while intoxicated if he was: (1) operating a motor vehicle; (2) in a public place; (3) while intoxicated. *See* Tex. Penal Code § 49.04(a). "Intoxicated" is defined, in relevant part, as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, . . . or having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2). Here, the jury was instructed that it could find McMurray guilty under either statutory definition of intoxication.

Evidence supporting the jury's finding that McMurray had been driving while intoxicated included:

- Officer Estrada's testimony that he encountered McMurray while on night-shift patrol in the early morning hours on July 5, when Officer Estrada was alert for "the possibility of more drunk drivers due to it being a holiday," and observed McMurray's vehicle speeding, *see Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (discussing probable cause to arrest for DWI and noting that because "[s]peeding can indicate impaired mental judgment," it "is a factor to be considered as part of the totality of the circumstances");

- Officer Estrada's detection of an odor of alcohol from McMurray's breath and person, *see Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (including person's "odor of alcohol on the breath" in list of "evidence of intoxication");

6

- McMurray's nonresponsive "Good question" in reply to Officer Estrada's inquiry about how much McMurray had to drink that night, *see State v. Garrett*, 22 S.W.3d 650, 654-55 (Tex. App.—Austin 2000, no pet.) (including defendant's nonresponsive reply to officer's question about how much defendant had to drink that night as factor to be considered in determining whether there was probable cause for DWI arrest); *see also Jones v. State*, No. 09-15-00308-CR, 2017 Tex. App. LEXIS 6103, at *4 (Tex. App.—Beaumont July 5, 2017, no pet.) (mem. op., not designated for publication) (noting that defendant "was evasive when he was asked how much and how recently he had been drinking" and concluding that it was one indicator favoring probable cause for DWI);

- receipts showing McMurray's purchase of numerous alcoholic beverages, including a bar tab from Kung Fu Saloon totaling $199 that was closed on July 5 at 12:22 a.m., about an hour before the stop at 1:24 a.m., *see Dansby v. State*, 530 S.W.3d 213, 230 (Tex. App.—Tyler 2017, pet. ref'd) (including "bar tabs from earlier in the night" among evidence supporting inference that defendant was intoxicated during relevant timeframe);

- McMurray's refusal to participate in any standard field-sobriety tests, *see Gilfeather*, 293 S.W.3d at 880-81 (noting that "the refusal to participate in field sobriety tests is a factor to be considered in the totality of the circumstances" supporting probable cause for DWI arrest); *Garrett*, 22 S.W.3d at 654-55 (including defendant's refusal to participate in any of usual field-sobriety tests as factor to be considered in determining whether there was probable cause for DWI arrest);

- McMurray's refusal to provide a sample of his breath, *see Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (recognizing that defendant's refusal to submit to breath test is relevant to show his consciousness of guilt); *see also* Tex. Transp. Code § 724.061 ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial.");

- McMurray's blood-test results showing that at 3:46 a.m. he had a BAC of .100 grams of alcohol per 100 milliliters of blood;

- the forensic scientist's testimony that McMurray was intoxicated when his blood was drawn and that, based on the time interval between when McMurray was stopped and when the blood was drawn, his BAC would have been falling; and

- Officer Estrada's testimony that McMurray had bloodshot eyes and slurred speech, *see Cotton*, 686 S.W.2d at 142 n.3 (including person's "slurred speech" and "bloodshot eyes"

7

in list of "evidence of intoxication"); *see also Slocum v. State*, No. 05-10-00807-CR, 2011 Tex. App. LEXIS 2911, at *8 (Tex. App.—Dallas Apr. 19, 2011, pet. ref'd) (mem. op., not designated for publication) (noting that jury heard officer's testimony that defendant had bloodshot eyes, slurred speech, and odor of alcoholic beverage on his breath; and that other witnesses denied that defendant drank any alcohol that evening and opined that his behavior on field-sobriety-test videotape looked normal; but "it was the jury's function to resolve any conflicts in the evidence, and the jury was free to accept or reject any and all of the evidence presented by either side").

The combined and cumulative force of the evidence presented during trial and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, supports the jury's finding that McMurray was intoxicated as charged.

As support for his contention that there was insufficient evidence proving his intoxication, McMurray states that: the forensic scientist did not testify that McMurray was intoxicated at the time of driving; Officer Estrada testified that McMurray had no problem walking, talking, or driving; and the video did not show that McMurray had bloodshot eyes or slurred speech. However, even if such evidence might have supported a contrary inference that McMurray was not intoxicated, our governing standard of review requires us to presume that the jury resolved evidentiary conflicts in favor of the verdict and to defer to that determination. *See Murray*, 457 S.W.3d at 448. Accordingly, we conclude that the evidence presented at trial is sufficient to support McMurray's conviction for the offense of driving while intoxicated. We overrule McMurray's first issue.

**Requested jury instruction**

Next, McMurray complains about the denial of his request for this jury instruction:

8

[N]o evidence obtained by an officer or other person in violation of any provisions of the Constitution and laws of the state of Texas or of the Constitution and laws of the United States of America shall be admitted in evidence against the accused on the trial of any case.

An officer is permitted to make an arrest of a motorist if the officer has probable cause to believe a motorist is committing or has committed an offense. Probable cause means whether the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has [ ] been or is being committed.

Therefore, if you believe or have reason to doubt that the officer arrested Anthony McMurray without probable cause in violation of the Constitution or the laws of the state of Texas of the United States of America, then in such event you shall disregard any evidence so obtained.

A trial judge must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Mendez v. State*, 545 S.W.3d 548, 551-52 (Tex. Crim. App. 2018); *see* Tex. Code Crim. Proc. art. 36.14. We review a complaint of jury-charge error in two steps: first, we determine whether error exists, and if so, we consider whether sufficient harm resulted from the error requiring reversal. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Unless the complained-of error exists, was preserved by objection, and is not harmless, it does not constitute reversible error. *See Price*, 457 S.W.3d at 440.

McMurray's requested instruction contained provisions similar to those in article 38.23, subsection (a) of the Code of Criminal Procedure, which states:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

9

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a). A defendant's right to submission of a jury instruction under article 38.23 is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). Entitlement to such an instruction requires a defendant to show that: (1) evidence heard by the jury raised an issue of fact; (2) the evidence on that fact was affirmatively contested; and (3) the contested factual issue was material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510. Unless there is a genuine dispute about a material issue of fact, no article 38.23 instruction is warranted. *Id.* When there is no disputed fact issue, the legality of the conduct is determined by the trial court alone, as a matter of law. *Id.* Additionally, if other facts that are not disputed are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.*

McMurray contends that he was entitled to his requested jury instruction under article 38.23(a) because there is a dispute as to the facts relied upon as probable cause for his arrest. He complains specifically about Officer Estrada's testimony that McMurray's eyes were bloodshot and that his speech was slurred, which McMurray says is contrary to the video evidence and to Kiddy's testimony. Thus, the issue is whether the trial court erred by implicitly concluding that the video and Kiddy's testimony did not affirmatively contest Officer Estrada's

testimony about McMurray having bloodshot eyes and slurred speech as those characteristics related to the lawfulness of his arrest for DWI. We conclude that the trial court did not err.

First, the video evidence shows that Officer Estrada's physical proximity to McMurray allowed him to see McMurray's eyes and determine whether they were bloodshot and to hear whether McMurray was slurring his speech during their conversation. Officer Estrada testified that he saw McMurray's bloodshot eyes, outside of the strong light from his flashlight on them. Officer Estrada did not waver from that testimony on cross-examination, stating that McMurray's eyes were bloodshot, even if that condition was not apparent from a portion of the video. *See id.* at 516 ("The real factual issue is whether Trooper Lily reasonably believed that [defendant] was acting in a nervous manner, not whether the videotape *shows* [defendant] acting in a nervous manner."); *see also Henneke v. Texas Dep't of Pub. Safety*, No. 03-18-00263-CV, 2018 Tex. App. LEXIS 5726, at *8 (Tex. App.—Austin July 26, 2018, pet. denied) (mem. op.) (rejecting Henneke's contention in license-suspension appeal that patrol-car video conclusively proved that he did not slur his speech and noting that "we cannot determine with certainty that Officer Mitchell was not able to detect slurred speech"). As to McMurray's speech, Officer Estrada's body camera recorded McMurry's slurred pronunciation of numerous words, as when he said, "So you pulled me over *suh*—for something that I legally explained to you," when he referred to the "Department of Motor *Vehelels*," when he claimed that the Department "is *supposed* to give me my MCO," and when he expressed his understanding that if he refused to perform the standard field sobriety tests, "I'll be *placed* under *arrest*." Thus, the video evidence did not affirmatively contest Officer Estrada's testimony about McMurray's indicators of intoxication.

Additionally, Kiddy's testimony did not affirmatively contest Estrada's testimony that McMurray had bloodshot eyes and slurred speech because Kiddy's answers were based only on what he saw when an unspecified portion of the video was played for him in court, not what Kiddy had seen when he was with McMurray on July 4th and 5th. Further, defense counsel asked Kiddy only whether he "recall[ed]" seeing McMurray with bloodshot eyes and whether Kiddy "recall[ed]" McMurray having slurred speech:

> Q. So you were present on this particular occasion?
>
> A. Yes, sir, I was.
>
> Q. Okay. Do you recall seeing Mr. McMurray with bloodshot eyes at any[]time during that day?
>
> A. No, sir, not that I recall.
>
> Q. Okay. Do you recall him having slurred speech at any[]time?
>
> A. No, sir.

Testimony from a witness that he does not remember or does not know a particular fact is "no affirmative evidence of a factual conflict." *See Madden*, 242 S.W.3d at 513 ("If, however, Officer Lily says that appellant did speed, and Witness Two (or [defendant]) says that he doesn't remember or doesn't know, there is no disputed fact to submit because there is no affirmative evidence of a factual conflict."). Because McMurray failed to show that the evidence presented at trial affirmatively contested Officer Estrada's testimony, we cannot conclude that the trial court erred by denying McMurray's requested jury instruction. *See id.* at 510, 513. We overrule McMurray's second and final issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   November 30, 2021

Do Not Publish