# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00725-CR

**The State of Texas, Appellant**

**v.**

**Trevor Reid Long, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-10-219030, HONORABLE BRANDY MUELLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Trevor Reid Long was charged with the misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2011). Prior to trial, Long filed a motion to suppress evidence of his intoxication that had been obtained following his arrest. The trial court suppressed the evidence on the ground that the arresting officer lacked probable cause to arrest Long for committing the offense. In a single issue on appeal, the State contends that the trial court abused its discretion in granting the motion to suppress. We will reverse the trial court's order and remand for further proceedings.

## BACKGROUND

At the suppression hearing, the trial court heard testimony from a single witness, Officer Anthony Martin of the Austin Police Department (APD). Martin, who had been with APD since 2007 and who estimated that he had conducted "maybe a thousand" DWI investigations during that time, testified that on the evening of October 22, 2010, at approximately 8:45 p.m., he was

traveling southbound on Research Boulevard in Austin in his unmarked patrol car when he noticed a vehicle approaching him from behind, "catching up to me fast." Martin, who estimated that he was driving between 60 and 65 miles per hour, believed that the approaching vehicle was exceeding the posted speed limit of 65 miles per hour. To confirm that the driver was speeding, Martin activated his rear antenna radar, which displayed a speed of 79 miles per hour. After allowing the vehicle to pass him, Martin conducted a traffic stop. The vehicle exited the highway and pulled into a gas station.

Martin testified that when he first approached the driver, who was later identified as Long, he "could smell a strong odor of alcoholic beverage coming from the vehicle, even over the cigar that [Long] was smoking." Martin added, "His eyes were glassy, watery."[1] Martin asked Long to step out of the vehicle. "Outside the vehicle," Martin further testified, "I could smell a strong odor of alcoholic beverage coming from his breath as he spoke to me." Martin also testified that Long had admitted to drinking "a couple beers with pizza at the Alamo Drafthouse" between 6:00 p.m. and 8:45 p.m., the time of the traffic stop. However, Martin believed that "what [he] was smelling wasn't beer."[2]

Martin next prepared to administer field sobriety tests. Martin asked Long preliminary screening questions before he began, including questions about his vision and any medications he was taking. According to Martin, Long told him that he is color blind and that he

---

[1] Martin acknowledged that Long's eyes could have been glassy and watery as a result of the cigar smoke.

[2] Later, after Long had been arrested and Martin was performing an inventory of Long's vehicle, Martin testified that he found a "half-gallon bottle of Jack Daniel's whiskey, 80 proof, with about a pint of it missing. It was behind the passenger seat in a paper bag."

takes Adderall, but that he had not taken it that day.[3] After completing the screening questions, Martin began to administer the HGN test, which checks for involuntary eye movement by directing a subject to follow a stimulus (usually a pen or a light) with his eyes. Martin explained that during the test, he observed what he characterized as "lack of smooth pursuit" in Long's eyes. However, Martin was unable to complete the administration of the HGN test because Long "just quit following the pen." Martin explained,

> [Long] said he was color-blind and the light and stimulus is hard to follow. I turned the light out. He still said he could not follow it. He said the light in the background was causing him trouble. I faced him a different way with almost no light at all. He still said he could not follow the pen. He then said he would not continue any roadside tests.

Long subsequently refused to perform the walk-and-turn test and the one-leg-stand test. At that point, Martin testified, "based on what I [had] seen so far and [Long's] refusal to go any further with me, I arrested him for DWI." When asked why he believed Long was intoxicated, Martin explained,

> Because [of] the totality of the circumstances: His speeding; the super strong odor of alcohol, even over the cigarette when he was out of the vehicle; while he was standing there doing the HGN, he was swaying; his refusal to follow the pen. I mean, I pulled over probably you know, a thousand folks and I don't run into a person that is not able to follow a pen. So he was—he was intentionally not following the pen. He didn't want to do any of the tests. And based on all those circumstances, all those things, I made an arrest for DWI.

Following Long's arrest, Martin requested a breath and blood sample. Long refused, and Martin subsequently obtained a search warrant for Long's blood. Martin testified that Long's blood was then drawn and secured as evidence.

---

[3] Although the record does not indicate what Adderall is, we take judicial notice that it is a prescription medicine used to treat attention deficit hyperactivity disorder.

In addition to Martin's testimony, the trial court also considered a video recording of the traffic stop and arrest taken from Martin's dashboard camera. The recording is consistent with Martin's testimony.[4] In the video, Long can be seen and heard conversing with Martin, then attempting to perform the HGN test, and, after several unsuccessful attempts, refusing to complete the test or perform any additional field sobriety tests. As their interaction progresses, Martin appears to become increasingly impatient with Long's difficulty in performing the test, while Long becomes increasingly non-cooperative with Martin. After Long refuses to perform the additional field sobriety tests, Martin places him under arrest.

Also considered by the trial court was the probable-cause affidavit that Martin completed in order to obtain the search warrant for Long's blood. In the affidavit, Martin indicates that Long's clothing was "orderly," that his eyes were "watery" and "glassy," that his speech was "good," and that his attitude was "uncooperative." Martin also indicated that Long refused to take the walk-and-turn test and the one-leg-stand test and exhibited two clues on the HGN test, specifically "lack of smooth pursuit" in both Long's left and right eyes. Martin added that Long "stopped" and "refused rest of test." Also, in a line on the affidavit labeled, "Pre-Arrest Admissions by Accused," Martin wrote, "[A]dmitted to drinking 2 ½ beers at the Alamo Drafthouse."[5]

---

[4] Long claims that, contrary to Martin's testimony, Long cannot be seen "swaying" in the recording. We disagree. Although the swaying is admittedly difficult to perceive on the recording, at one point when Long is attempting to perform the HGN test while standing, his upper body can be seen swaying toward and away from Martin as Martin is waving the pen in front of Long.

[5] Martin also described in the affidavit the bottle of Jack Daniels he found in Long's vehicle. However, the bottle was found after Martin had been arrested, and it therefore cannot be used in the determination of whether Martin had probable cause to arrest Long for DWI.

4

Following the hearing, the trial court took the matter under advisement and subsequently granted the motion to suppress. Following its ruling, the trial court entered findings of fact and conclusions of law, including the following:

The Court ruled that though there was sufficient evidence to stop the Defendant on a traffic violation, the subsequent arrest for DWI, was not sufficiently supported. The Court granted the Defendant's motion to suppress as to this argument, ruling for the Defense on this issue on October 25, 2011, specifically finding that there was insufficient evidence of intoxication.

. . . .

The speed limit on Research Boulevard is 65 mph. Officer Martin was driving between 60 and 65 miles per hour himself, when he observed the Defendant operating a Ford Ranger behind him . . . "catching up" to him rapidly. Officer Martin then observed the Defendant pass him, moving quickly or "fast."

Officer Martin used the Stalker Doppler Mobile Radar Device in his vehicle and clocked the Defendant going 79 miles per hour. Officer Martin testified that he had calibrated the radar both manually and automatically prior to using it on the Defendant's vehicle. The radar showed no signs of errors and it appeared by all accounts, he testified, to be working properly.

Based on the fact that the Defendant appeared by Officer Martin's observation to be speeding, as confirmed by the radar, the Officer initiated a traffic stop and the Defendant pulled over without incident.

Upon contact with the Defendant, the Officer observed a strong odor of both cigar smoke and alcohol.

The video evidence in this case was stipulated to by both the Prosecution and the Defense counsel and was admitted into evidence. The video evidence constitutes a dashboard video that captured the entirety of the facts at issue on camera, from the traffic stop to the arrest for DWI. After the hearing, the Court took this case under advisement in order to watch the entirety of the video. The Court both watched and listened to the video evidence multiple times.

The video evidence shows the Defendant to speak clearly and to respond to the Officer's questions appropriately. The video also shows the Defendant to sit and stand appropriately and to in what seems like all, if not almost all, other ways provide for a lack of intoxication indicators. The Defendant's face and eyes are likewise

5

captured up close for a time on camera with a good amount of lighting and do not provide for an appearance of intoxication. The Officer's probable cause affidavit described the Defendant's speech as "good." The Court similarly finds upon review of the video, the Defendant's speech to be good.

Other than watery, glassy eyes and an odor of alcohol, albeit a strong one, the probable cause affidavit and the Officer's testimony does not provide additional marked evidence of intoxication. The watery and glassy eyes could have been due to the cigar smoke.

The Defendant does not agree to perform the field sobriety tests and so the record does not include indicators of intoxication here. It is worthy of note, that the Defendant appears to initially agree to undergo the horizontal gaze nystagmus test, but stops before much if any of the test is fully administered. Officer Martin testified that a lack of smooth pursuit was observed, but points out what is clear on the video, that Mr. Long refuses the rest of the test.

The Court finds that Officer Martin was credible.

The Court further finds that the record does not provide for sufficient evidence of probable cause on the issue of intoxication, based primarily on the Court's assessment of the video evidence in this case and the lack of impairment observed therein.

This appeal followed.

## STANDARD OF REVIEW

It is well settled that in reviewing a trial court's ruling on a motion to suppress, "an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and

6

mixed questions that do not depend on credibility determinations." *Id*. at 922-23 (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).  Stated another way, "[a]ppellate courts review the legal determination of detention, reasonable suspicion, and probable cause under the Fourth Amendment de novo while granting great deference to a trial court's factual findings." *State v. Sheppard*, 271 S.W.3d 281, 286-87 (Tex. Crim. App. 2008).  In this case, because the trial court expressly found Officer Martin to be credible, we use a de novo standard of review to determine whether the officer had probable cause to arrest Long.  *See State v. Garrett*, 22 S.W.3d 650, 654 (Tex. App.—Austin 2000, no pet.) (citing *Guzman*, 955 S.W.2d at 87-89).

### ANALYSIS

The State argues on appeal that the trial court erred in concluding that Officer Martin did not have probable cause to arrest Long.  In the State's view, the trial court failed to consider the totality of facts and circumstances within Officer Martin's knowledge at the time he placed Long under arrest.  Instead, the State contends, the trial court incorrectly applied the law to the facts by focusing on the absence of certain indicators of intoxication in the video recording and by either overlooking or discounting the evidence that tended to show that Long was intoxicated.  In response, Long maintains that the warrantless arrest in this case was unreasonable under the circumstances.

"Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *United States v. Watson*, 423 U.S. 411, 418 (1976)).  "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*,

7

338 U.S. 160, 175 (1949)). Probable cause is not a "finely tuned standard" but is instead a "fluid concept," and its "substantive content" is derived from "the particular context[] in which" it is assessed. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In the context of a warrantless arrest, probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador*, 275 S.W.3d at 878 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

"The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Id*. (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (internal citation omitted). "This means that a 'divide-and-conquer' or piecemeal approach [to the evidence] is prohibited." *Wiede*, 214 S.W.3d at 25 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). "The subjective intent or motivations of law enforcement officials is not taken into account when considering the totality of the circumstances." *Id*. (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). "But the training, knowledge, and experience of law enforcement officials is taken into consideration." *Id*. (citing *Arvizu*, 534 U.S. at 273; *Texas v. Brown*, 460 U.S. 730, 742 (1983); *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995); *United States v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977)).

The trial court, in concluding that there was "insufficient evidence" of intoxication, appears to have focused primarily on certain indicators of intoxication, such as slurred speech, that were absent from the video recording. Specifically, the trial court found that Long's speech was "good"—that he "[spoke] clearly and [] respond[ed] to the Officer's questions appropriately"; that

Long appeared to "sit and stand appropriately and to in what seems like all, if not almost all, other ways provide for a lack of intoxication indicators"; that Long's "face and eyes are likewise captured up close for a time on camera with a good amount of lighting and do not provide for an appearance of intoxication";[6] and that, because Long did not agree to perform the field sobriety tests, "the record does not include indicators of intoxication here." The trial court further found that "[o]ther than watery, glassy eyes and an odor of alcohol, albeit a strong one, the probable cause affidavit and the Officer's testimony does not provide additional marked evidence of intoxication."

The probable-cause inquiry, however, has a different focus. We begin by emphasizing that the State did not have to prove that Long actually was intoxicated in order to justify the arrest. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("It is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'") (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Again, probable cause to arrest exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador*, 275 S.W.3d at 878. Accordingly, probable cause requires evidence that amounts to "more than bare suspicion" but "less than . . . would justify . . . conviction." *Brinegar*, 338 U.S. at 175. There is no requirement that specific "intoxication indicators" be present before an officer has probable cause to arrest a person for driving while intoxicated, because the indicia that a suspect has been driving while intoxicated

---

[6] We observe that Long's face and eyes are "captured up close on camera" only after Long had been arrested and placed in Martin's patrol car. Prior to that, Long's face and eyes can only be seen, when at all, from a distance. We note that Officer Martin, who was in close physical proximity to Long throughout the entirety of the traffic stop (as opposed to this Court and the trial court, which had to rely on a dashboard-camera video recording), testified that he observed Long's eyes to be "watery" and "glassy."

may be different in each case. *See Woodward v. State*, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982) ("It must be kept in mind in reviewing a question of sufficiency of probable cause that such a question is a quintessential example of the necessity for case-by-case determination based upon the facts and circumstances shown."). To the extent that the trial court granted the motion to suppress on the basis that there was "insufficient evidence of intoxication" due to the absence of certain specific "intoxication indicators" in the video recording, this was an abuse of discretion. *See State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.) (reversing trial court's suppression order where trial court based its finding of lack of probable cause on absence of "classic indicators of inebriation" in defendant's conduct).

Moreover, by focusing on what it characterized as a "lack of intoxication indicators" in the video recording, the trial court seems to have overlooked or minimized the significance of evidence of intoxication that Officer Martin personally observed, which was not disputed, and which the trial court found credible. For example, Martin testified that Long had admitted that prior to driving, he had consumed "a couple of beers" at the Alamo Drafthouse. A DWI suspect's admission that he has been drinking is considered a relevant factor in the determination of probable cause. *See, e.g.*, *Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.); *Espericueta v. State*, 838 S.W.2d 880, 881, 883 (Tex. App.—Corpus Christi 1992, no pet.). Other facts and circumstances supporting a finding of probable cause include Long speeding, the "super strong odor of alcohol" that Martin smelled when Long was both inside and outside the vehicle, and the "lack of smooth pursuit" in Long's eyes that Martin observed while administering the HGN test. Even though these facts and circumstances were not apparent in the video recording (except for Long's admission that he had

10

been drinking, which can be heard in the recording), they were nevertheless personally observed by the arresting officer whose testimony the trial court expressly found to be credible, and therefore should have been considered by the trial court in its determination of whether Martin had probable cause to arrest Long. *See, e.g.*, *Amador*, 275 S.W.3d at 879 (crediting officer's observation of defendant operating "a motor vehicle on a public roadway at a high rate of speed, in excess of the posted speed limit" as supporting probable cause to arrest for DWI); *Pesina v. State*, 676 S.W.2d 122, 127 (Tex. Crim. App. 1984) (recognizing that officer had probable cause to arrest defendant where evidence of intoxication included fact that defendant had "a strong odor of alcohol on his breath"); *Garrett*, 22 S.W.3d at 654 (observing that when trial court finds officer testimony to be credible, reviewing court is to similarly accept officer testimony "as accurate"); *see also State v. May*, 242 S.W.3d 61, 61 (Tex. App.—San Antonio 2007, no pet.) (reversing trial court's suppression order where evidence of intoxication included officer observations that defendant had collided with another vehicle and "smelled of alcohol at the time of her accident"); *State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref'd) (reversing trial court's suppression order where evidence of intoxication included evidence that defendant was speeding and smelled of alcohol).

Finally, the trial court's findings suggest an impermissible "divide-and-conquer" or "piecemeal" approach to the evidence. For example, the trial court discounted Martin's observation of Long's "watery" and "glassy" eyes by concluding that they "could have been due to the cigar smoke." Also, the trial court found that because Long "[did] not agree to perform the field sobriety tests . . . the record does not include indicators of intoxication here." If there was nothing in the record other than Long's watery and glassy eyes, or nothing other than his refusal to perform field

11

sobriety tests, we might agree with the trial court's conclusions. But we are to view the evidence in its totality, not in isolation. Considered in its totality, we conclude that Long's refusal to perform the field sobriety tests, combined with Long's watery and glassy eyes, and further combined with all the other evidence discussed above, meets the legal standard of probable cause here—it was sufficient to warrant a prudent person in believing that Long had committed the offense of driving while intoxicated. *See, e.g.*, *Maxwell v. State*, 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd) (probable cause to arrest existed where defendant refused to submit to field sobriety tests, was caught speeding, and admitted that he had been drinking); *Garrett*, 22 S.W.3d at 654-55 (probable cause to arrest existed where defendant had violated traffic laws, smelled like alcohol, had watery eyes, and refused to participate in field sobriety tests); *Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.) (probable cause to arrest existed where defendant smelled like alcohol, admitted to drinking, and failed HGN test); *see also State v. Turner*, No. 05-10-00519-CR, 2011 Tex. App. LEXIS 8, at *9 (Tex. App.—Dallas Jan. 4, 2011, pet. ref'd) (op., not designated for publication) (reversing trial court's suppression order where trial court applied the discredited "as consistent with innocent activity as with criminal activity" test instead of "totality of the circumstances" test).[7]

In summary, Officer Martin, a witness who stated that he had investigated approximately one thousand DWIs over several years and who the trial court expressly found to be credible, testified to the following facts and circumstances that were within his knowledge at

---

[7] Long devotes much of his brief to noting factual differences between his case and certain cases cited by the State, arguing that there was evidence of intoxication in those cases that was not present here. But just because there may be additional evidence of intoxication in these other cases does not mean that probable cause is absent in this case. As all of the cited cases demonstrate, the probable-cause determination is based on the totality of the facts and circumstances in each case, and the absence or presence of any particular fact or circumstance is not dispositive.

the time of the arrest: (1) he had personally observed Long speeding past his patrol car and had confirmed via his radar that Long was exceeding the posted speed limit of 65 miles per hour at the rate of 79 miles per hour; (2) Long had admitted to drinking "a couple of beers" at the Alamo Drafthouse prior to driving; (3) Long had a "super strong odor of alcohol" coming from his vehicle when Martin first approached him that Martin could smell "even over the cigar that [Long] was smoking"; (4) when Long was outside the vehicle, Martin could still smell "a strong odor of alcoholic beverage coming from [Long's] breath as he spoke" to Martin, and Martin believed it smelled like an alcoholic beverage other than beer; (5) Martin observed Long's eyes to be "watery" and "glassy"; (6) Martin observed Long "sway" during a portion of the HGN test; (7) Martin observed a "lack of smooth pursuit" in both Long's right and left eyes during the HGN test; (8) Long had difficulty following Martin's pen during the HGN test, eventually refused to complete the test after several unsuccessful attempts, and also refused to perform both the walk-and-turn test and the one-leg-stand test; and (9) Long became increasingly non-cooperative as the investigation proceeded. We conclude that the totality of the above facts and circumstances provided Martin with probable cause to arrest Long for the offense of driving while intoxicated. Accordingly, the evidence obtained following the arrest should not have been suppressed, and the trial court abused its discretion in concluding otherwise. We therefore sustain the State's sole issue.[8]

---

[8] We note that in a recent opinion, the court of criminal appeals held that when the trial court's fact findings are "ambiguous" and the trial court fails to make an express finding on the credibility of the witness at the suppression hearing, the appropriate procedure is to abate the appeal and remand the case to the trial court for the entry of more specific factual findings. *See State v. Mendoza*, No. PD-1000-11, 2012 Tex. Crim. App. LEXIS 646, *18-19 (Tex. Crim. App. May 9, 2012). Such a procedure is not needed here. In this case, the trial court expressly found the officer's testimony to be credible, and the trial court's fact findings are clear and specific.

**CONCLUSION**

We reverse the order of the trial court granting Long's motion to suppress and remand the cause to the trial court for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed:   May 31, 2012

Do Not Publish