

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00056-CR

**JAMES DANIEL LEIGH,**

                                  **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                  **Appellee**

---

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. F42563

---

## MEMORANDUM  OPINION

---

The jury convicted James Daniel Leigh of the felony offense of driving while intoxicated.  They jury found the enhancements paragraphs to be true and assessed punishment at 49 years confinement.  We affirm.

### Background Facts

Deputy Jeremy Goff, with the Johnson County Sheriff's Office, testified that on January 26, 2008, he was in his personal vehicle on his way to work.  Deputy Goff noticed a green vehicle in the passing lane collide with a tractor trailer.  The green

vehicle then hit a guardrail before coming to a stop. Deputy Goff called dispatch to report the accident. While he was on the phone with dispatch, Deputy Goff saw the driver of the green vehicle throw beer cans and a liquor bottle out of the vehicle. Deputy Goff then approached the driver of the vehicle, and he smelled a strong odor of an alcoholic beverage coming from the driver's breath. Deputy Goff identified the driver of the green vehicle as James Leigh.

Michael O'Malia testified that as he was driving his truck, he heard a loud bang and that a vehicle had collided with the side of his fuel tank. O'Malia slammed on his brakes, and the vehicle slammed into his truck again. The vehicle hit his truck a third time before hitting a guardrail and coming to a stop. O'Malia stopped his truck and went back to check on the occupants of the vehicle. O'Malia identified Leigh as the driver of the vehicle, and he testified there was also a child in the vehicle. When he arrived at the vehicle, O'Malia could smell alcohol, and he believed Leigh had been drinking.

Deputy James Novian arrived at the scene to assist, and he testified that he smelled a strong odor of an alcoholic beverage on Leigh's person. Deputy Novian further testified that there was a seven year-old child in the vehicle. Deputy Novian identified the child and stayed with the child while his mother was being notified.

Alvarado police officer Brad Anderson arrived at the scene to handle the investigation because the accident occurred within the Alvarado city limits. Officer Anderson testified that he made contact with Leigh and that he smelled an alcoholic beverage on Leigh's person and that Leigh had slurred speech and glassy eyes. Officer

Anderson asked Leigh if he had been drinking, and Leigh responded that he had had three beers. Officer Anderson stated that Leigh had trouble walking, appeared unsteady, and that Leigh was argumentative.

Officer Anderson conducted the HGN test, and he observed six clues indicating intoxication. He then asked Leigh to perform the one-leg stand field sobriety test. Leigh did not follow instructions, and he did poorly on that test. Officer Anderson searched the area where Deputy Goff saw Leigh throw out beer cans and a liquor bottle. He was able to recover a Jose Cuervo tequila bottle that had a small amount of liquid left in the bottle. Officer Anderson believed Leigh was intoxicated, and he placed Leigh under arrest.

Officer Anderson transported Leigh to the jail, and Leigh fell asleep en route to the jail. Once they arrived at the jail, Leigh became very agitated, took off all of his clothes, screamed at the jailers, and tried to fight the jailers. Leigh refused to give a breath or blood sample and he would not answer questions or cooperate with the book-in process.

**Motion to Suppress**

In his first issue, Leigh argues that the trial court erred in denying his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling.

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.-Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Leigh argues that the trial court erred in finding that Officer Anderson had probable cause to arrest him for driving while intoxicated. In determining that Officer Anderson had probable cause to arrest Leigh, the trial court issued findings of fact and conclusions of law finding that: 1) Officer Anderson smelled the strong odor of an alcoholic beverage on Leigh; 2) Officer Anderson observed Leigh's eyes were glassy and his speech was slurred; 3) Officer Anderson observed that Leigh was unsteady on his feet; 4) Officer Anderson was qualified to conduct and did conduct two field sobriety tests; and 5) Leigh failed the field sobriety tests.

Probable cause exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense. *Hughes v. State*, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992); *State v. Garrett*, 22 S.W.3d 650, 654 (Tex.App. – Austin 2000, no pet.). Probable cause must be examined in light of the totality of the circumstances

established by the evidence. *See Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); *State v. Garrett*, 22 S.W.3d at 654.

The odor of alcohol, watery eyes, and unsteadiness are all classic signs that suggest a suspect's mental and physical faculties might be impaired. *State v. Garrett*, 22 S.W.3d at 654. The evidence supports the trial court's findings that Leigh had a strong odor of alcohol, that he had glassy eyes, and that he was unsteady. The record also shows that the field sobriety tests conducted on Leigh indicated that he was intoxicated. We conclude that under the totality of circumstances, the officers had probable cause to justify a warrantless arrest of Leigh. We overrule the first issue.

### Expert Testimony

Leigh argues in his second issue that the trial court erred in allowing Officer Anderson to testify as an expert with respect to the HGN test in the presence of the jury. The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. TEX. R. EVID. 702; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Absent an abuse of discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Wyatt v. State*, 23 S.W.3d at 27. For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN. *Id*.

Officer Anderson testified that he was certified to conduct the HGN test at the time he administered the test to Leigh. Officer Anderson testified that he was not sure if his certification was still valid at the time of trial because he was no longer a patrol officer, and he let some certifications lapse. Officer Anderson was certified at the time he administered the HGN test, and he further testified that he has extensive training in administering the test. The trial court did not abuse its discretion in allowing Officer Anderson to testify as an expert on the HGN test. *See Kerr v. State,* 921 S.W.2d 498, 502 (Tex.App.-Fort Worth 1996, no pet.).

Leigh also argues that Officer Anderson did not perform the test in accordance with National Highway Traffic Safety Administration (NHTSA) standards. Officer Anderson testified that he "left out a couple of passes" when performing the HGN test. Leigh also argues that Officer Anderson did not test for the onset of nystagmus prior to 45 degrees. Officer Anderson agreed with defense counsel that he did not perform the test in accordance with the NHTSA guidelines. However, Officer Anderson testified that not performing the required number of passes or holding the stimulus for the required amount of time would not cause a nystagmus; it would not create a false positive. Officer Anderson further testified that he observed six clues indicating intoxication including the onset of nystagmus prior to 45 degrees.

Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to be given the testimony. *Compton v. State*, 120 S.W.3d 375, 378 (Tex.App.-Texarkana 2003, pet. ref'd). It would be unreasonable to conclude that any variation in administering the tests, no

matter how slight, could automatically undermine the admissibility of an individual's poor performance of the tests. *Id*. There is nothing to suggest that Officer Anderson's variations from NHTSA standards undermined the reliability of the results. The trial court did not abuse its discretion in admitting Officer Anderson's testimony on the HGN test.

Moreover, any harm in allowing Officer Anderson to testify about the results of the HGN test did not affect Leigh's substantial rights. TEX. R. APP. P. 44.2 (b). There was other evidence indicating Leigh was driving while intoxicated: Leigh had a strong odor of alcohol; that he had glassy eyes; was unsteady on his feet; he was uncooperative with police officers and did not follow instructions on the field sobriety tests; he was observed throwing beer cans and a liquor bottle out of his vehicle; and he fell asleep while being transported to the jail. The jury viewed the video of his performance on the field sobriety tests. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 24, 2013
Do not publish
[CR PM]