ACCEPTED
03-15-00228-CR
8219113
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 11:37:51 AM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00228-CR

## IN THE

## COURT OF APPEALS

## FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 11:37:51 AM
JEFFREY D. KYLE
Clerk

_____

### CLIFTON CREWS HOYT,

Appellant.

## VS.

### THE STATE OF TEXAS,

Appellee.

_____

**From the 391ST Judicial District Court
Tom Green County, Texas
Honorable Tom Gossett, Judge Presiding**

_____

## BRIEF OF STATE

_____

## APPELLEE WAIVES ORAL ARGUMENT

**Richard Villarreal
Assistant District Attorney
119TH Judicial District
124 W. Beauregard, Suite B
San Angelo, Texas 76903
(325) 659-6583
TSB #00797602
ATTORNEY FOR APPELLEE**

# TABLE OF CONTENTS

**PAGE**

LIST OF AUTHORITIES..............................................................................................2

STATEMENT OF THE FACTS ....................................................................................5

ISSUE ONE ..................................................................................................................8
      SUMMARY OF THE ARGUMENT ................................................................8
      ARGUMENT AND AUTHORITIES..............................................................9

ISSUE TWO .................................................................................................................19
      SUMMARY OF THE ARGUMENT ................................................................19
      ARGUMENT AND AUTHORITIES..............................................................20

PRAYER.......................................................................................................................30

CERTIFICATE OF COMPLIANCE .............................................................................31

CERTIFICATE OF SERVICE ......................................................................................31

# LIST OF AUTHORITIES

*Cases*

*Allen v. State*, 249 S.W.3d 680 (Tex. App.—Austin 2008, no pet.) ............................................ 21

*Amores v. State,* 816 S.W.2d 407 (Tex. Crim. App. 1991) ................................................................ 9

*Annis v. State*, 578 S.W.2d 406 (Tex. Crim. App. 1979) ................................................................ 24

*Brinegar v. United States*, 338 U.S. 160 (1949) ................................................................................ 9

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) .............................................................. 20

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011) ................................................................. 20

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) ....................................................... 20, 21

*Crittenden v. State,* 899 S.W.2d 668 (Tex. Crim. App. 1995) ........................................................ 18

*Davis v. State,* 947 S.W.2d 240 ....................................................................................................... 9

*Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005) ............................................................ 18, 19

*Gaddis v. State,* 753 S.W.2d 396 (Tex. Crim. App. 1988) ............................................................. 27

*Garcia v. State,* 43 S.W.3d 527 (Tex. Crim. App. 2001) .......................................................... 10, 18

*Jackson v. Virginia,* 443 U.S. 307 (1979) ................................................................................... 20, 21

*Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009) .............................................................. 20

*Matthews v. State,* No. 03-13-00037-CR, 2014 Tex. App. LEXIS 13722, (Tex. App.—Austin Dec. 23, 2014)(mem. op., not designated for publication) ....................................................... 20

*Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004) ................................................................. 20

*Railsback v. State*, 95 w.w.3d 473, 484 (Tex. App.—Houston [1st Dist] 2002, pet. ref'd) .......... 28

*State v. Garrett,* 22 S.W.3d 650 (Tex. App. –Austin [3rd Dist.] 2000) ............................................ 9

*State v. Long,* No. 03-11-00725-CR 2012 Tex. App. LEXIS 4402 (Tex. App.—Austin May 31, 2012) (mem. op., not designated for publication) .................................................................. 23

*Vaugn v. State,* 493 S.W.2d 524 (Tex. Crim. App. 1972) .............................................................. 28

### *Statutes*

37 Tex. Admin. Code § 15.6 (1976) (Tex. Dept. of Public Safety, Motorcycle License)............ 10

Tex. Code Crim. Proc. art. 38.04. .................................................................................................... 21

Tex. Penal Code § 49.01 ................................................................................................................. 22

Tex. Penal Code § 49.04 ........................................................................................................... 19, 21

Tex. Penal Code § 49.09 ................................................................................................................. 21

Tex. Transp. Code Ann. § 521.221 (c) ........................................................................................... 10

Tex. Transp. Code Ann. § 521.457 (a) ........................................................................................... 10

Tex. Transp. Code Ann. § 545.156 (a)(2),..................................................................................... 13

Tex. Transp. Code Ann. § 724.061 ................................................................................................. 27

### *Ordinances*

SAN ANGELO, TEX. , CODE OF ORDINANCES, Sec. 10.01.001  (1959 Code, sec. 10-3-1; 1996 Code, sec. 10.101; ordinance adopted 5/3/05) ................................................................................... 11

SAN ANGELO, TEX., CODE OF ORDINANCES, Sec. 10.03.02 (1959 Code, sec. 10-3-12; 1996 Code, sec. 10.112) ............................................................................................................... 10, 13

NO. 03-15-00228-CR

IN THE

COURT OF APPEALS

FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

_____

CLIFTON CREWS HOYT,

Appellant.

VS.

THE STATE OF TEXAS,

Appellee.

_____

From the 391ST Judicial District Court
Tom Green County, Texas
Honorable Tom Gossett, Judge Presiding

_____

BRIEF OF STATE

_____

TO THE HONORABLE COURT OF APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS:

COMES NOW, The State of Texas, in the above entitled and numbered cause, and files this the BRIEF OF APPELLEE and in support thereof, the State would show this Honorable Court as follows:

4

## STATEMENT OF THE FACTS

San Angelo Police Department patrol Officer Antonio Aguilar was patrolling in the area west of Bryant Boulevard and south of Loop 306 on February 11, 2013. (R.R. Vol. 2, pp. 12-13). At approximately 6:00 p.m., Officer Aguilar received a broadcast message regarding a reckless driver in the area of Knickerbocker and South Bryant. The broadcast message had also included a license plate number and indicated the vehicle was a motorcycle. (R.R. Vol. 2, p. 14). Officer Aguilar ran the license plate and noted that it came back to Appellant. (R.R. Vol. 2, p. 15). Officer Aguilar had dealt with Appellant on previous occasions and had knowledge that Appellant's driver's license was suspended and that Appellant did not have a motorcycle endorsement. (R.R. Vol. 2, pp. 15,16,17,31 and STATE'S EXHIBIT NO. 5, Video at 17:59:06 - 17:59:26, AUDIO OUTPUT 1). Officer Aguilar observed a motorcycle that matched the broadcast description and license plate. Officer Aguilar also recognized Appellant from previous incidents. (R.R. Vol. 2, p. 15). Officer Aguilar then activated his lights and attempted to pull over Appellant for Driving While License Suspended, operating a motorcycle without a license that had a motorcycle endorsement and violation of a city ordinance against exhibition of acceleration. (R.R. Vol. 2, pp. 15-16). Officer Aguilar noted that it took appellant a few blocks before he pulled over. (R.R. Vol. 2, p. 17).

Once Appellant had pulled over, Officer Aguilar made observations about Appellant. Officer Aguilar noted that Appellant was not dressed for the weather noting that Appellant was wearing shorts, was very agitated, fidgety and seemed to be having a hard time holding still. (R.R. Vol. 2, pp.17-18).

Officer Aguilar stated that he had dealt with Appellant on more than one occasion in the past and it was his belief that on this occasion Appellant's behavior was outside the norm. (R.R. Vol. 2, p. 18).

Officer Aguilar had regular SFST training and was at the time a Certified Drug Recognition Expert. (R.R. Vol. 2, p.18).

The first test administered by Officer Aguilar was the horizontal gaze nystagmus test. (R.R. Vol. 2, p. 21). Officer Aguilar observed no clues on this test. (R.R. Vol. 2, p. 21). Officer Aguilar stated that you would expect to see no nystagmus if a person is under the influence of a drug such as Marihuana but would expect to see it if a person is under the influence of alcohol. (R.R. Vol. 2, pp.20-21). Officer Aguilar did not smell the odor alcohol on Appellant. (R.R. Vol. 2, p. 21).

The next test administered by Officer Aguilar was the walk and turn test. (R.R. Vol. 2, p. 21). This test has eight possible clues. (R.R. Vol. 2, p. 22). Appellant attempted the test and was unable to maintain his balance during the instructional stage, missed touching heel to toe a few times and had to use his arms

to balance.  Officer Aguilar observed three of the eight possible clues.  (R.R. Vol. 2, p. 22).

The next test administered by Officer Aguilar was the one leg stand.  (R.R. Vol. 2, p. 23).  The one leg stand test involves a subject raising their foot approximately six inches off the ground,  keeping it parallel to the ground and keeping their arms down by their sides, loot at their toe and count out loud while they were looking at their upraised toes.  The subject would then be observed for thirty seconds to see if they were able to maintain their balance.  (R.R. Vol. 2, p. 23).  This test has four possible clues.  (R.R. Vol. 2, p. 23).  Officer Aguilar observed three of the four possible clues.  (R.R. Vol. 2, p. 23).  Appellant swayed, used his arms for balance and put his foot down.  (R.R. Vol. 2, p. 23).

Officer Aguilar then placed Appellant under arrest for driving while intoxicated.  (R.R. Vol. 2, p. 25).  Officer Aguilar then conducted a search of Appellant's person incident to the arrest.  (R.R. Vol. 2, pp. 25-26).  Officer Aguilar located less than two ounces of marihuana in Appellant's pocket.  (R.R. Vol. 2, p. 26).

Officer Aguilar read Appellant his statutory warnings.  (R.R. Vol. 2, p. 26).  Once Officer Aguilar had read Appellant his statutory warning he asked Appellant to provide a sample of his breath.  (R.R. Vol. 2, p. 26).  Appellant refused to provide a sample of his breath.  (R.R. Vol. 2, p. 26).

Appellant was transported to jail by Officer Aguilar. (R.R. Vol. 2, p. 26). Officer Aguilar noted that during the time that he was reading Appellant the statutory warnings through the time that he was transporting Appellant to jail, Appellant's behavior continued to be outside the norm. (R.R. Vol. 2, p. 26). Appellant was raging, yelling, cursing at Officer Aguilar and then seemed to crash and pass out, actually falling asleep. (R.R. Vol. 2, p. 26). Officer Aguilar stated that it was the wild fluctuation of behavior that was out of the norm. (R.R. Vol. 2, p. 27). Officer Aguilar testified that he had observed Appellant on occasions when he was not intoxicated and Appellant's behavior on this date was different. (R.R. Vol. 2, p. 27).

## ISSUE ONE

Whether the Trial Court erred when it denied Appellant's motion to suppress.

## SUMMARY OF THE ARGUMENT

The Trial Court correctly denied Appellant's motion to suppress. There was reasonable suspicion or probable cause to initiate a traffic stop for violation of a traffic law and upon contact with the driver of the stopped vehicle the officer noted additional information which gave him reasonable suspicion to conduct an intoxication investigation.

## ARGUMENT AND AUTHORITIES

In order to justify a traffic stop there must be reasonable suspicion that a traffic violation has occurred. *Davis v. State,* 947 S.W.2d 240, 242-44 (Tex. Crim. App. 1997).

Probable cause exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense." *Brinegar v. United States*, 338 U.S. 160, 164 (1949). Probable cause must be examined in light of the totality of the circumstances established by the evidence. *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); *State v. Garrett,* 22 S.W.3d 650, 653-654 (Tex. App. –Austin [3rd Dist.] 2000).

Reasonable suspicion exists when officer observes specific objective, articulable facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation had occurred. *See Davis v. State,* 947 S.W.2d 240, 242-43 (Tex. Crim. App. 1997). This standard is an objective one, there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering

the totality of the circumstances. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Tex. Transp. Code Ann. § 521.457 (a) makes it an offense if a person operates a motor vehicle on a highway during a period that the person's driver's license or privilege is suspended or revoked.

Tex. Transp. Code Ann. § 521.221 (c) makes it an offense if a person operates a motor vehicle in violation of a restriction imposed or without the endorsement required on the license issued to that person.

37 Tex. Admin. Code § 15.6 (1976) (Tex. Dept. of Public Safety, Motorcycle License) describes the necessary endorsements required on a motor cycle operator's driver's license in order to legally operate a motorcycle under Tex. Transp. Code Ann. § 521.221.

SAN ANGELO, TEX., CODE OF ORDINANCES, Sec. 10.03.02 (1959 Code, sec. 10-3-12; 1996 Code, sec. 10.112), makes it unlawful to make an exhibition of acceleration while driving a motor vehicle on a public street in the city. There are three separate ways of proving exhibition of acceleration as it is defined under the San Angelo city code of ordinances. One way of proving exhibition of acceleration is "Accelerating a motor vehicle so as to move rapidly ahead of or out of a group of other motor vehicles which are traveling at approximately the officially posted speed limit in the area." SAN ANGELO, TEX. , CODE OF

ORDINANCES, Sec. 10.01.001 (1959 Code, sec. 10-3-1; 1996 Code, sec. 10.101; ordinance adopted 5/3/05).

The evidence in this case shows that Officer Aguilar received a broadcast message regarding a reckless driver in the area of Knickerbocker and South Bryant. The broadcast message also included a license plate number and indicated the vehicle was a motorcycle. (R.R. Vol. 2, p. 14). Officer Aguilar ran the license plate and noted that it came back to Appellant. (R.R. Vol. 2, p. 15). Officer Aguilar had dealt with Appellant on previous occasions and had knowledge that Appellant's driver's license was suspended and that Appellant did not have a motorcycle endorsement on his driver's license that would allow him to lawfully operate a motorcycle. (R.R. Vol. 2, pp. 15, 16, 17, 31). (STATE'S EXHIBIT NO. 5, Video at 17:59:06 - 17:59:26, AUDIO OUTPUT 1). Officer Aguilar observed a motorcycle that matched the broadcast description and license plate number. Officer Aguilar also recognized Appellant from previous incidents. (R.R. Vol. 2, p. 15). From Officer Aguilar's patrol video, which the trial court viewed, Officer Aguilar's patrol vehicle is seen approaching Appellant while he is stopped at a red light signal. Officer Aguilar does not immediately activate his emergency lights and siren as he drives up behind Appellant instead the light turns green and both Officer Aguilar's testimony and the video show that appellant clearly accelerated his motorcycle so as to move rapidly ahead of the other vehicles that had been

11

initially grouped with Appellant and Officer Aguilar's patrol vehicle and all of which had initially left the light at the same time as Appellant. (STATE'S EXHIBIT NO. 5, Video at 18:02:56 to 18:04:14, AUDIO OUTPUT 1). The speed limit on the roadway being traveled is 40 m.p.h. This speed limit is clearly posted on signage that is visible on the video both before and after the traffic light from which Appellant accelerates. (STATE'S EXHIBIT NO. 5, Video at 18:02:42, 18:03:07, AUDIO OUTPUT 1). The patrol video viewed by the trial court also displayed information about Officer Aguilar's patrol vehicle, such as vehicle speed and when the lightbar or siren is activated. (STATE'S EXHIBIT NO. 5, Video). The video indicates that when Officer Aguilar activates his light bar to pull Appellant over, his patrol vehicle is traveling at approximately 33 m.p.h. and quickly accelerates to 37 m.p.h. and yet Appellant's vehicle is significantly ahead of Officer Aguilar's vehicle and the other group of vehicles with whom Appellant had initially been traveling. (STATE'S EXHIBIT NO. 5, Video at 18:03:07, AUDIO OUTPUT 1). (R.R. Vol. 2, p.15-16). All of this information was available to the trial court to assist it in determining whether Officer Aguilar had reasonable suspicion that Appellant had committed or was about to commit the offense of exhibition of acceleration. Officer Aguilar noted that it took appellant a few blocks before he pulled over. (R.R. Vol. 2, p. 17). Officer Aguilar activated his siren on two occasions due to the extraordinarily long period of time it took

12

Appellant to pull over. (STATE'S EXHIBIT NO. 5, Video at 18:03:11 and 18:03:20). Officer Aguilar also noted that when Appellant did finally pull his vehicle over, Appellant ended up making a left turn off of Bryant, which left turn would have required him to cross three lanes of oncoming traffic and then pulling off on a side street versus going immediately to the right-hand side of the roadway and pulling over. (R.R. Vol. 2, p. 17). Appellant's actions in failing to immediately pull over the right hand side of the roadway are in clear violation of Tex. Transp. Code Ann. § 545.156 (a)(2), which instructs a driver of a vehicle approached by authorized emergency vehicle to immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection.

At this point, Officer Aguilar has personally observed a traffic violation, namely a violation of CODE OF ORDINANCES, CITY OF SAN ANGELO, TEXAS SEC. 10.03.02 exhibition of acceleration, and would therefore not only have reasonable suspicion but probable cause to stop the vehicle for this violation of the law. In addition Officer Aguilar has a reasonable suspicion that Appellant's driver's license is suspended and that Appellant does not have a driver's license endorsement to operate a motorcycle, testifying that "it hadn't been too long before that that I run his license and from what I recall he had multiple suspensions. It didn't seem reasonable to me that every single one of them had been lifted." (R.R.

13

Vol. 2, p. 31). "I recognized Mr. Hoyt, and I previously dealt with him regarding driving with license invalid and I knew his license was invalid at the time." (R.R. Vol. 2, p. 15). "It hadn't been too long before that that I had run his license, and from what I recall, he had multiple suspensions. It didn't seem reasonable to me that every single one of those had been lifted." (R.R. Vol. 2, p. 31). "I was going on the belief from all of my past dealing with him that the license was still invalid at that point." (R.R. Vol. 2, p.31). The fact that Appellant's license is invalid and that he does not have a motorcycle endorsement is verified by Appellant himself. (R.R. Vol., p. 60). Appellant is also heard on Officer Aguilar's patrol video acknowledging that his license was not valid that that he did not have a motorcycle endorsement on his driver's license. (STATE'S EXHIBIT NO. 5, video at 18:04:34 to 18:05:33, 18:07:19 to 18:07:34, AUDIO OUTPUT 1).

Once Appellant has finally stopped, Officer Aguilar is able to make contact with Appellant. Officer Aguilar's testimony about his initial observations of Appellant note that Appellant, who was wearing shorts, was not dressed for the weather. (R.R. Vol. 2, pp. 17-18). Weather which Officer Aguilar, as already discussed, described as "chilly" "cold" "wind blowing". Officer Aguilar testified that based on his training and experience people who are under the influence of a drug may not feel heat and cold the same as a sober person. (R.R. Vol. 2, p. 51). In addition, Officer Aguilar described Appellant as being very agitated, fidgety,

14

was scratching, seemed to have a hard time holding still, and that he just seemed off, outside the norm. (R.R. Vol. 2, pp. 17-18, 51). Officer Aguilar further testified that "There were times when his hands were moving around, when he was incapable of holding his entire body still, which was another indication to me that is very common with somebody who is under the influence of certain drugs. They're unable to hold their entire body still for any length of time." (R.R. Vol. 2, p. 67). Officer Aguilar stated that he had dealt with Appellant on more than one occasion in the past and it was his belief that on this occasion Appellant's behavior was outside the norm. (R.R. Vol. 2, p. 18).

Officer Aguilar now has the following information, he has received information regarding reckless driving by a person driving the motorcycle that Appellant is operating, he has observed Appellant commit a traffic offense, he has observed Appellant take an extraordinarily long time to pull over, he has observed Appellant's behavior which to him based on his training and experience is indicative of possible drug use. Additionally Officer Aguilar, who has interacted with Appellant on other occasions, observes that Appellants behavior on this day seems off and outside the norm.

Officer Aguilar, who initially had justification to stop and detain Appellant's vehicle based on reasonable suspicion and probable cause that a traffic violation had occurred, at this point based on the totality of the circumstances now has

sufficient reasonable suspicion to begin an intoxication investigation.

And indeed only when all of this information, the totality of the circumstances, is available to him does Officer Aguilar begin his intoxication investigation. (R.R. Vol. 2, p. 18).

Appellant's attempt to discredit Officer Aguilar's testimony by arguing multiple times that this incident occurred on "a mild winter day" is misleading. (Appellant Brief, p. 10). Appellant makes this statement of "a mild winter day" with no supporting cite from the record to show a basis for such a statement. Officer Aguilar, the only witness to testify, stated "I know I was very cold out there.", "Honestly, sir, to me, I was wearing a jacket and I was wearing long pants. It was near sundown, and I was cold." (R.R. Vol. 2, p. 53). Officer Aguilar further stated in response to the question of how the weather was on that date, February the 11th of 2013, "It was pretty chilly" and "From what I remember there was wind blowing." (R.R. Vol. 2, p. 53). There is absolutely no evidence in the record except for Officer Aguilar's uncontradicted testimony that the weather was cold on that day.

Appellant also attempts to argue that that Officer Aguilar's observation of Appellant's exhibition of acceleration offense was made *after* he initiated a traffic stop by activating his lights and pulling appellant over for a suspected driver's license. (Appellant Brief, pp. 6-7). Again Appellant makes this argument without

any support from the record and this argument is clearly repudiated as has previously been shown, from Officer Aguilar's patrol video, which the trial court, viewed during the trial, Officer Aguilar's patrol vehicle is seen approaching Appellant while he is stopped at a red light signal. Officer Aguilar does not immediately activate his emergency lights and siren as he drives up behind Appellant instead the light turns green and both Officer Aguilar's testimony and the video show that appellant clearly accelerated his motorcycle so as to move rapidly ahead of the other vehicles which had initially left the light at the same time as Appellant and which were traveling at approximately the speed limit. (STATE'S EXHIBIT NO. 5, Video at 18:02:56 to 18:04:14, AUDIO OUTPUT 1). It only after observing this additional traffic offense that Officer Aguilar activates his lightbar to stop Appellant's vehicle.

Appellant also attempts to establish that Appellant's commission of the traffic offense of exhibition of acceleration was not "reckless" nor did it endanger any other motorists. As neither "recklessness" nor "endangering others" is an element of the offense of exhibition of acceleration this line of argument is not relevant to determining whether Officer Aguilar had a reasonable suspicion that a traffic offense had occurred.

Appellant through his argument attempts to extrapolate Officer Aguilar's alleged subjective beliefs to a legal argument. Appellant's arguments are based on

17

the proposition that Officer Aguilar stopped this vehicle solely because he believed the driver of the vehicle was intoxicated and argues therefore that Officer Aguilar's reasonable suspicion for stopping Appellant's vehicle "was merely a pretext to conduct what he described as an intoxication investigation." (Appellant Brief, p. 7). However, it is clear that a stop will not be invalidated based on the subjective motivation of a police officer so long as there is an objectively valid basis for the stop. *Crittenden v. State,* 899 S.W.2d 668, 673 (Tex. Crim. App. 1995). The standard to justify a traffic stop is an objective one; there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Regardless of whether Officer Aguilar initially and subjectively believed that an intoxicated person was driving the vehicle he was following, there was an objective traffic offense that justified the initial traffic stop.

Appellant spends a large portion of his argument attempting to fit the facts of this case under the holdings of *Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005) arguing that "the officer's testimony and the video introduced into evidence by the State did not support the alleged acceleration." (Appellant Brief, p. 10). Appellant's case however, is distinguishable in that that unlike *Ford*, the trial court in Appellant's case had the benefit of additional evidence of the traffic violation in the form of the video recording from Officer Aguilar's patrol car. The

18

fact finder in this case unlike that in *Ford* had the benefit of viewing the actual incident, the actual traffic offense in determining whether Officer Aguilar had a reasonable suspicion to stop Appellant's vehicle. In addition in this case, unlike *Ford*, Officer Aguilar, objectively, had multiple violations of the law that he was working with, including investigating a reckless driver call, driving while license suspended, operating a motorcycle without the proper license endorsement, and exhibition of acceleration.

Officer Aguilar had probable cause to stop Appellant's vehicle for violation of a traffic offense. Once Officer Aguilar stopped the vehicle, he observed additional facts which when combined with all the other information available to him reached a sufficient level of reasonable suspicion to allow him to expand the stop into an intoxication investigation.

## ISSUE TWO

Whether the legal and factual evidence was sufficient at trial that the Appellant was driving while intoxicated pursuant to Tex. Penal Code § 49.04.

## SUMMARY OF THE ARGUMENT

The evidence was sufficient to sustain a conviction for driving while intoxicated.

## ARGUMENT AND AUTHORITIES

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

In Texas, evidence to support a verdict is legally sufficient if viewed in a light most favorable to the verdict, the evidence, and all reasonable inferences there from would allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The Court will review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson v. Virginia,* 443 U.S. 307, 318 (1979); *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Matthews v. State,* No. 03-13-00037-CR, 2014 Tex. App. LEXIS 13722, at 8, 9 (Tex. App.-- Austin Dec. 23, 2014)(mem. op., not designated for publication).

In determining the legal sufficiency of the evidence, the Court must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex.

App.—Austin 2008, no pet.). The trier of fact, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, a reviewing court must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Allen,* 249 S.W.3d at 689. The role of a court reviewing a sufficiency argument is not that of a fact finder but rather as a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen*, 249 S.W.3d at 688.

Appellant was found guilty of the offense of felony driving while intoxicated. The elements of the offense of driving while intoxicated under Tex. Penal Code § 49.04 are that Appellant was operating a motor vehicle in a public place while intoxicated. Further under Tex. Penal Code § 49.09, to be punished as a felony offense Appellee had to show that Appellant had two prior convictions for driving while intoxicated.

21

Appellant limits his sufficiency argument to the element of intoxication. Intoxication is defined in Tex. Penal Code § 49.01 (2) as not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body or by having an alcohol concentration of 0.08 or more.

Appellant first argues that since there was no evidence that Officer Aguilar obtained a search warrant for a breath or blood sample or conducted a background check and that there was no evidence as to why Officer Aguilar did not seek a mandatory blood draw these omissions should be evidence of insufficiency. (Appellant Brief, pp. 12-13). However, the Court when determining sufficiency will consider the totality of the circumstances. Therefore the Court will examine every piece of evidence that was available to the trial court. What additional evidence could have been presented to the trial court is not relevant. The fact that Appellant argues that other evidence could have been presented at trial in no way furthers his argument that the evidence that was available to the trial court was insufficient.

Appellant next attempts to limit the State's evidence of intoxication by stating that Officer Aguilar made his intoxication determination, "solely on the fact that appellant wore shorts on a mild winter day while driving a motorcycle and that

he exhibited agitation and fidgetiness during the investigation period." (Appellant Brief, p. 13). Appellant's argument is flawed, because he incorrectly limits the scope of the State's evidence of intoxication. Officer Aguilar made his determination that Appellant was intoxicated not just from the specific items Appellant has chosen to argue but based on his observations from beginning to end, on the totality of the entire incident. (R.R. Vol. 2, pp. 25, 38, 51). Appellant attempts to make a "piecemeal" argument stating that a particular piece of evidence by itself is not sufficient proof of intoxication. However when looking at the sufficiency of evidence you should not use a "divide-and-conquer" or "piecemeal" approach to the evidence. Evidence should be reviewed in totality not in isolation" *State v. Long,* No. 03-11-00725-CR 2012 Tex. App. LEXIS 4402 at 18-19 (Tex. App.—Austin May 31, 2012) (mem. op., not designated for publication).

In addition to attempting to limit Appellee's evidence of intoxication, Appellant's incomplete list of evidence is also misleading in that it states that this day was "a mild winter day." (Appellant Brief, p.13). Appellant makes this statement of evidence with no supporting cite from the record to show a basis for such a statement. Officer Aguilar, the only witness to testify, stated "I know I was very cold out there.", "Honestly, sir, to me, I was wearing a jacket and I was wearing long pants. It was near sundown, and I was cold." (R.R. Vol. 2, p. 53).

23

Officer Aguilar further stated in response to the question of how the weather was on that date, February the 11th of 2013, "It was pretty chilly" and "From what I remember there was wind blowing." (R.R. Vol. 2, p.53). The only evidence available to the trial court was Officer Aguilar's uncontradicted testimony that the weather was cold that day.

As a general rule, the testimony of a peace officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication. See *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).

The fact finder in this case, when considering the element of intoxication, under the totality of the circumstances would have had the following information: That Officer Aguilar had initially begun his investigation after receiving a broadcast message in regards to a reckless driver in the area driving a motorcycle and having a license plate that matched the vehicle Appellant was operating. (R.R. Vol. 2, p. 14). That Officer Aguilar observed Appellant commit a traffic offense. This traffic offense consisted of a violation of a city ordinance against exhibition of acceleration. (R.R. Vol. 2, pp. 15-16). After Officer Aguilar activated his lights, Appellant took several blocks to stop. (R.R. Vol. 2, p. 15). From Officer Aguilar's patrol video the trial court was able to observe that Appellant did not immediately pull to right side of the roadway and stop as is required when approached by an emergency vehicle with emergency lights activated. Appellant

instead continues for several blocks, crossing an intersection that was controlled by traffic signals and which had a left turn lane. Appellant continues to an intersection controlled by a stop sign where he and Officer Aguilar must turn left and cross three lanes of oncoming traffic. This turn was made directly in front of a parking lot for a convenience store which would have required simply driving into the lot. (State's Exhibit #5, Video at 18:02:56 - 18:04:14). The trial court also had Officer Aguilar's initial observation s about Appellant noting that Appellant, who was wearing shorts, was not dressed for the weather. (R.R. Vol. 2, pp. 17-18). Weather which Officer Aguilar, as already discussed, described as "chilly" "cold" "wind blowing". Officer Aguilar testified that based on his training and experience people who are under the influence of a drug may not feel heat and cold the same as a sober person. (R.R. Vol. 2, p. 51). In addition, Officer Aguilar described Appellant as being very agitated, fidgety, was scratching, seemed to have a hard time holding still, and that he just seemed off. (R.R. Vol. 2, pp. 17-18, 51). Officer Aguilar further testified that "There were times when his hands were moving around, when he was incapable of holding his entire body still, which was another indication to me that is very common with somebody who is under the influence of certain drugs. They're unable to hold their entire body still for any length of time." (R.R. Vol. 2, p. 67). Officer Aguilar stated that he had dealt with Appellant on more than one occasion in the past and it was his belief that on this

25

occasion Appellant's behavior was outside the norm. (R.R. Vol. 2, p. 18). Officer Aguilar had received training in Standardized Field Sobriety Testing with the San Angelo Police Department and was also a certified drug recognition expert. (R.R. Vol. 2, p.18). Officer Aguilar's observations of Appellant's performance on the field sobriety tests including the Horizontal Gaze Nystagmus test. (R.R. Vol. 2, p. 20). The fact that Officer Aguilar did not observe any nystagmus which would be consistent with impairment by drugs such as marihuana. (R.R. Vol. 2, p.21). During the Walk & Turn test, Officer Aguilar observed Appellant unable to maintain his balance during the instructional stage, observed him miss heel to toe steps during the test, observed him use his arms for balance. Officer Aguilar observed three out of eight possible clues on the Walk & Turn test. (R.R. Vol. 2, p. 22). During the One Leg Stand test, Officer Aguilar observed Appellant sway, observed him use his arms for balance, observed him put his foot down. Officer Aguilar observed three out of four possible clues on the One Leg Stand test. (R.R. Vol. 2, p. 23). Officer Aguilar located a baggy in Appellant's pocket which based on Officer Aguilar's training and experience he believed to be marihuana. Appellant, without questioning from Officer Aguilar, stated that the substance was marihuana. (R.R. Vol. 2, p. 26). Appellant refused to provide a sample of his breath after his statutory warnings were read to him. (R.R. Vol. 2, pp. 38-39). Texas courts have held that intoxication is a legitimate deduction from a

26

defendant's refusal to take a breath test. *Gaddis v. State,* 753 S.W.2d 396, 399-400 (Tex. Crim. App. 1988). A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial. Tex. Transp. Code Ann. § 724.061. Officer Aguilar also testified that as he was transporting Appellant to jail, he made further observations about Appellant's behavior, stating, "his behavior was -- It continued to be outside of the norm. He was raging, yelling, cursing at me, but then he seemed to crash and passed out, actually fell asleep. I had to wake him up. Whenever I woke him up he immediately shot back up to that extremely agitated state of yelling and cursing." (R.R. Vol. 2, pp. 26-27). Officer Aguilar also testified that Appellant's behavior of going back and forth between sleep and rage can be indicative of drug use. (R.R. Vol. 2, p. 69). Officer Aguilar further testified that it was not common for an individual to fall asleep in his patrol vehicle. (R.R. Vol. 2, p. 71).

Officer Aguilar was able to offer the trial court a unique perspective. Officer Aguilar had dealt with Appellant on other occasions. He had seen him when Appellant was not intoxicated. Officer Aguilar had given Appellant Standardized Field Sobriety Tests in the past and had determined that Appellant was not intoxicated on another occasion. (R.R. Vol. 2, pp. 27, 44). Officer

Aguilar testified that he had also dealt with Appellant when he was quite clearly under the influence of a drug and that appellant's behavior during this incident was similar to Appellant's behavior under the influence of a drug. (R.R. Vol. 2, p. 40). This is unique because when he is forming an opinion as to whether or not Appellant has lost the normal use of his mental or physical faculties, Officer Aguilar has actual knowledge of Appellant's non impaired behavior. He can compare Appellant's use of his faculties not only against the manner in which a hypothetical normal non-intoxicated person would be able to use his faculties but he can go one step further and compare Appellant's use of his faculties against the manner in which a normal non-intoxicated Appellant would be able to use his faculties. *Railsback v. State*, 95 w.w.3d 473, 484 (Tex. App.—Houston [1st Dist] 2002, pet. ref'd). The lay opinion of a police officer is admissible as to the officer's observations and to prove a defendant's intoxication. *Emerson,* 880 S.W.2d at 763; *Vaugn v. State,* 493 S.W.2d 524, 525 (Tex. Crim. App. 1972).

Appellant in an attempt to limit Appellee's evidence of intoxication argues that Officer Aguilar "made this intoxication determination based solely on the fact that appellant wore shorts on a mild winter day while driving a motorcycle and that he exhibited agitation and fidgetiness during the investigation period." (Appellant's Brief, p. 13). This is clearly a mischaracterization of the evidence available to the trial court. Officer Aguilar testified that he did not rely on any one

particular event to determine that Appellant was intoxicated rather he looked at "the totality of the circumstances, just everything all put together…" (R.R. Vol. 2, pp. 38, 51). Officer Aguilar when asked if there was one particular thing that led to his opinion of intoxication states "With intoxication investigations, it's always the totality of the circumstances. You never base your decision off of just one single test. You have to look at everything--basically from the moment you first observe the person all the way up until you make that decision to arrest them. Their driving, their mannerisms, in the DRE world was call clinical indicators as well as the psychophysical indicators that you observe whenever they're actually performing the field sobriety tests. You take all that in combination and make a determination based off the whole totality of it." (R.R. Vol. 2, p. 25).

The evidence presented to the trial court was sufficient to sustain Appellant's conviction for driving while intoxicated. The trial court as trier of fact was the arbitrator of credibility and weight given to evidence. The trial court held based on the evidence before it that it was satisfied that Appellant was guilty of driving while intoxicated beyond a reasonable doubt. (R.R. Vol. 2, p. 79).

For the foregoing reasons, the State respectfully requests this Court overrule the Appellant's Issues Presented.

## **PRAYER**

WHEREFORE, the State prays this Court overrule all issues presented by Appellant and Affirm the Judgment of the trial court for the reasons stated herein.

Respectfully Submitted,

GEORGE MCCREA
119TH DISTRICT ATTORNEY

_____

Richard Villarreal
Assistant District Attorney
51ST & 119th Judicial District
124 W. Beauregard, Suite B
San Angelo, Texas 76903
(325) 659-6583
TSB# 00797602
ATTORNEY FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based upon the computer program used to generate this brief, that this brief contains 6,085 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count.  I further certify that this brief is in a conventional 14-point typeface.

_____
Richard Villarreal
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of State was electronically served on John T. Floyd (jfloyd@johntfloyd.com) and Christopher M. Choate (choate@johntfloyd.com ), The Kirby Mansion, 2000 Smith Street, Houston, TX 77002, counsel for Appellant on the 14th day of December, 2015.

_____
Richard Villarreal
Assistant District Attorney